[Civ. No. 4227.   Second Appellate District, Division Two.—May 2, 1927.]

ALFALFA GROWERS OF CALIFORNIA, INC. (a Corporation), Appellant, v. A. ICARDO et al., Respondents.

[1] CORPORATIONS — ASSESSMENTS — POWER OF NONPROFIT CORPORATIONS.—A nonprofit corporation organized without capital stock under the provisions of sections 653m et seq. of the Civil Code for the purpose of distributing the product of its members, who are alfalfa growers, is not clothed with statutory power to levy assessments against its members.

[2] ID.—CONTRACT RIGHT TO LEVY ASSESSMENT—UNJUST DISCRIMINATION.—While the power to levy assessments may be created by contract between a corporation and its members, where a nonprofit corporation organized without capital stock for the purpose of distributing the product of its members, by its articles of incorporation and by-laws, attempts to provide for the levy of assessments on its members, but the machinery provided therefor cannot but result in an unjust discrimination between the members, a purported assessment thereunder cannot be enforced by action.

[3] ID.—EQUAL AND UNIFORM ASSESSMENTS.—It is of the very essence of the law of assessments of the capital stock of corporations that the exactions shall be equal and uniform, and the same rule applies to corporations which have no capital stock, even when the power is claimed to exist by contract.

(1) 2 C. J., p. 998, n. 31 New.   (2) 23 C. J., p. 156, n. 61.

APPEAL from a judgment of the Superior Court of Kern County.   T. N. Harvey, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Johnson & Lemmon and Emmons & Aldrich for Appellant.

Dorsey & Campbell, Kaye & Siemon and L. E. Nathan for Respondents.

WORKS, P. J.—Plaintiff is a nonprofit association, or corporation, organized under the provisions of the Civil

3.   See 6 Cal. Jur. 957.

Code for the purpose of distributing the product of its members, who are alfalfa growers. The defendants, as copartners, owned a membership in the organization. This action was commenced for the purpose of enforcing the collection of an unpaid assessment against the membership held by them. The cause was tried by a jury and a verdict was rendered in favor of plaintiff, but the trial court later made its order granting a new trial. From this order plaintiff appeals.

[1] It is contended by respondents that appellant was without authority to levy assessments against its members, and we think the contention must be upheld. The statute is searched in vain for such authority. There are no provisions whatever directly relating to assessments in the sections of the Civil Code (secs. 653m to 653sc) under which appellant was organized and pursued its existence. It is provided, however, in section 653m that the associations contemplated by it shall have all the "powers granted to private corporations by the laws of this state, except such powers as are inconsistent with those granted by this title." Section 653q reads, in part: "Each association incorporated under this title shall have the powers granted by the provisions of this code and other laws of California relating to private corporations . . . " Section 653sb provides: "Nothing in this title shall be deemed to prohibit any cooperative association formed or existing hereunder from having and exercising the same powers in carrying out its purposes as are enjoyed or exercised by corporations which issue capital stock."

We think these three provisions are not sufficient to clothe appellant with statutory power to levy assessments. The enactments which provide for the levy of assessments by corporations relate exclusively to assessments upon capital stock. To begin with, the article of the Civil Code upon the subject (article II of chapter II of Title I of Part IV of Division First) is headed "Assessments of Stock," and section 331, which confers the power, reads in part, with our italics: "The directors of any corporation formed or existing under the laws of this state, *after one fourth of its capital stock has been subscribed,* may . . . levy and collect assessments *upon the subscribed capital stock* thereof . . . " Appellant has no capital stock, and it would seem, therefore,

whatever is the force to be attributed to those portions of sections 653m, 653q, 653sb which are above quoted, that the language employed is not of sufficient potency to import the provisions of the code relating to assessments of capital stock. In corporations like appellant the basis upon which the right to assess rests is simply nonexistent. And there are particular reasons for the inapplicability of provisions of law relating to assessments to such corporations as appellant. That corporation was organized under a "Title" of the code (secs. 653m to 653sc) which provides for the organization of associations by "persons engaged in the production, preserving, drying, packing, shipping, manufacturing, preparing for market, or marketing of agricultural, viticultural, or horticultural products, or all of them" (sec. 653m). It is feasible to provide for assessments of capital stock, for each share of the stock of a given corporation is like all the other shares and an equitable basis exists upon which to make a levy; but what similarity exists, as a foundation for a just and equal assessment, between those members of a corporation like appellant who, respectively, produce, or preserve, or dry, or pack, or ship, or manufacture, or prepare for market, or market either an agricultural, or a viticultural, or a horticultural product? We can see none, and, on the whole, we are convinced that appellant is possessed of no statutory authority to levy assessments upon its memberships.

[2] There are many decided cases to the effect that the power to levy assessments may be created by contract between a corporation and its members. It is insisted by appellant that it enjoys a power so created, as both its articles of incorporation and by-laws contain provisions attempting to confer the authority.

The difficulties pointed out during our consideration of the question whether appellant enjoyed statutory authority to levy assessments are illustrated and intensified when we come to examine the contention that the right existed by virtue of contract. Appellant's articles of incorporation provided that the purposes of the organization, in part, were "to promote, foster and encourage the business of growing alfalfa and other hay and straw," and to aid "in the marketing, processing, warehousing, storing and distribution thereof and of alfalfa products, and by-products, and of

other hay products and straw and its products and by-products''; that each member should ''be entitled to one vote and to one unit of interest in the property of the association, and to one additional vote, and one additional unit of interest, for each and every ton of alfalfa or major portion thereof, produced by him or upon his ranch or in affiliated activities owned, operated and controlled by him and sold or listed for sale by the association for him in each year''; that ''any person, firm or corporation or manager, or officer of any corporation or member of any firm engaged in the business of producing alfalfa or controlling the production thereof or having any interest in such production . . . may be admitted to membership in the Association and shall have voting power and property rights therein on the same basis as all other members''; that every member should pay ''an entrance or membership fee based upon a specified amount per acre for each and every acre of lands planted to alfalfa and represented by him''; and that the directors should have the right to levy assessments and that notices of assessment ''shall be mailed to all of the members and such assessment shall become valid and binding upon all of the members'' unless within a certain time ''members owning a majority of the property rights herein shall file . . . written dissents or objections thereto.''

It was provided in the by-laws of appellant, in addition to some matters which are practically repeated from the articles of incorporation, that members of the association were of two classes, active members, ''to include all members who have any interest, direct or indirect, in the production of alfalfa,'' and associate members, ''including all other members,'' and that the active members were divided into two subclasses, marketing members, ''to include all Active Members whose alfalfa acreage is to be marketed, in whole or in part,'' and nonmarketing members, ''to include all other Active Members''; and that the board of directors should have the right to levy assessments ''to carry out any of the legitimate purposes of the Association, each member to be liable prorate in accord with the alfalfa acreage owned, controlled or represented.'' Particularly it is to be noticed that the by-laws repeated the clause of the articles of incorporation to the effect that notices of assessment were

to be mailed to all members and that assessments were to be enforceable against all.

It will be observed that the articles of incorporation and the by-laws provided a scheme for the levying of assessments which could operate neither justly nor equitably between the members. The memberships in the association were not like memberships in the ordinary social club, under which each member enjoys privileges exactly like those enjoyed by all the others, and under which, therefore, all are equal. Appellant was organized for the purpose of fostering and advancing the financial welfare of its members, and each membership was valuable to the holder of it to an extent which depended upon the value and importance of the enterprise or interest which through his membership he placed under appellant's care. It was unavoidable, therefore, that some memberships should be of a value different from that attaching to all the others. Under the articles of incorporation all memberships were treated as alike upon the score of liability to assessment, even if members were allowed a number of votes and a number of unities of interest proportioned to the tonnage of alfalfa produced by each. If we concede for the sake of argument that the provisions of the by-laws in a respect about to be mentioned were not an illegal and unwarranted departure from the articles, we may observe that the by-laws provide for the prorating among the members of the amount of assessments upon the basis of the "alfalfa acreage owned, controlled or represented." But this arrangement could not make assessments equal even as between those who were strictly of one class upon the score of the protection afforded them by their memberships, those, for instance, who were all growers of alfalfa. It is a notorious fact, and one of which we will take judicial notice (*Ex parte Kohler*, 74 Cal. 38 [15 Pac. 436] ; *Wingard* v. *Industrial Acc. Com.*, 57 Cal. App. 674 [207 Pac. 1030]), that the quantity of alfalfa produced per acre of land is widely divergent, even that the amount produced from two acres lying side by side is often greatly different.

If we drop consideration of those who are similarly situated to the extent of being growers, we are confronted with greater inequalities and uncertainties. The prorating of the amount of assessments between the members is made to

depend, as we have already noticed, upon "the alfalfa acreage owned, controlled or represented"; but those who become members need neither own, control, nor represent acreage. The statute (Civ. Code, sec. 653m), provides for a membership composed of "persons preserving, drying, packing, shipping, manufacturing, preparing for market, or marketing" alfalfa, in so far as the substantives employed in the enactment may be applied to the alfalfa industry. The articles of incorporation of appellant, which must be construed in the light of the statute, provide that those "engaged in the business of producing alfalfa or controlling the production thereof or having any interest in such production" may become members of the association. One section of the by-laws provides, it is true, that membership in appellant shall be limited to the state market director "and any and all alfalfa growers in the State of California, or the owner or lessor or lessee of any land in California whereon alfalfa is grown." This language, it is obvious, furnishes some considerable possibility, if not the certainty, of an inequality of assessments as between owners, lessors, and lessees. Owners may not be growers of alfalfa and lessors will not be, except where leases provide for a growing by lessees upon shares. Further, however, the clause just quoted from the by-laws, in its attempt to limit memberships to those interested in growing, is not in accord with the statute, it is a departure from the articles of incorporation and it is out of harmony with a later section of the by-laws themselves. As we have observed, the by-laws provide for active members, "to include all members who have any interest, direct or indirect, in the production of alfalfa," these being subdivided into, first, those "whose alfalfa acreage is to be marketed, either in whole or in part," and, second, "all other active members." Associate members are also provided for, to include all who are not active members.

If for a moment we pay regard to these classifications of memberships, it seems obvious that they, taking statute, articles of incorporation, and by-laws together, are based upon the idea that different members have differing degrees of interest in the welfare of appellant, and that, therefore, their memberships are different in value. And yet, it is not possible, even forgetting the difference in quantity of production from different acres of alfalfa land, equitably to

prorate assessments among the various classes of members, as it necessarily appears that they cannot all be graded upon the score of comparative acreage in production.

Another peculiar condition arises from the provisions of the articles of incorporation and by-laws. Suppose we limit ourselves now to a consideration of those who are growers or who are "directly or indirectly" interested in growing. Suppose we view a copartnership like that of which the four respondents are members. Suppose the copartnership has ten acres of alfalfa lands in production. The articles provide that "Any . . . firm . . . or member of any firm engaged in the business of producing alfalfa," etc., is eligible to membership in appellant. Undoubtedly, under this provision the copartnership and each of its four members might "join" appellant. Suppose they did so. Here, then, arise five memberships. Each of them must be assessed alike, if an assessment be attempted, for the by-laws provide (italics ours) that upon assessments "*each* member to [shall] be liable prorate in accord with the alfalfa acreage owner, controlled or *represented*." Here are five separate assessments upon one ten acres, while a second ten acres, "owned, controlled or represented" by one member, say the owner, is burdened with but one assessment.

The paper organization of appellant is subject to further dissection upon the subject here under inquiry, but we refrain from a further prosecution of the task. We are convinced that any attempt upon the part of appellant to levy an assessment upon its members, under the machinery which it has attempted to provide for the purpose, could not but result in an unjust discrimination between them. **[3]** It is of the very essence of the law of assessments of the capital stock of corporations that the exactions shall be equal and uniform (6 Cal. Jur. 957), and the rule must of necessity apply to corporations which have no capital stock, even when the power is claimed to exist by contract. We determine that such a corporation cannot enforce by action alleged contracts for assessments where the exactions will result in unjust discrimination between its members.

Order affirmed.

Thompson, J., concurred.

CRAIG, J., Concurring.—I concur in the conclusion reached in the foregoing opinion upon the ground that the corporate structure of the Alfalfa Growers of California, incorporated, is not such as to permit of the assessment upon which suit in the instant case was based, and for the reasons set forth by Presiding Justice Works. Concerning the other ground upon which his decision is founded, I prefer to express no opinion. It is unnecessary to do so since, if the assessment in question is void, it is unimportant whether under sections 653m to 653sc of the Civil Code a co-operative association might be so organized as to assess its members.