[Crim. No. 1233.   In Bank.—September 6, 1905.]

Ex Parte CHARLES E. HAYDEN, on Habeas Corpus.

HABEAS CORPUS—VOID STATUTE—POLICE POWER—LABELING OF FRUIT
    SHIPPED—CRIMINAL OFFENSE.—The act of 1903 requiring all fruit
    shipped or offered for shipment to be labeled with the .county
    and locality where the same was grown, and making it a crime
    to violate the act, is void, as being an unconstitutional invasion of
    liberty and not a proper exercise of the police power; and a
    shipper of fruit convicted and sentenced for a violation thereof
    will be discharged on *habeas corpus.*

ID.—LIMITATIONS UPON POLICE POWER—OBJECT OF STATUTE.—The legis-
    lature cannot under the guise of police regulations enact laws not
    pertaining to the public welfare, public health, or public morals,
    and which impose onerous and unnecessary burdens upon business
    and property.   Where there is no question in the statute as to the
    shipping of diseased fruit or of false labeling, but the true purpose
    of the act is to obtain for the fruit-raisers of some well-advertised
    and favored localities an advantage in their own fruit, it forms
    no part of the police power, and is wholly beyond the prerogative
    of the legislature.

ID.—JUDICIAL QUESTION.—It is always a judicial question whether any
    particular regulation of the constitutional right of the citizen to
    engage in an innocent and useful business is a valid exercise of
    the legislative power.

APPLICATION for Writ of Habeas Corpus to the Sheriff
of Santa Cruz County.

The facts are stated in the opinion of the court.

Wright & Wright, for Petitioner.

Benjamin K. Knight, District Attorney, for Respondent.

HENSHAW, J.—Petitioner was convicted and sentenced to
punishment for a violation of the provisions of a state stat-
ute, which provides as follows: "All fruit, green and dried,
contained in boxes, barrels or packages, which shall hereafter
be shipped or offered for shipment in this state by any person,
firm or corporation, shall have stamped, branded, stenciled or
labeled in a conspicuous place on the outside of every such
box, barrel or package, in clearly legible letters, at least one

quarter of an inch in height, a statement truly and correctly designating the county and immediate locality in which such fruit was grown.'' (Stats. 1903, p. 338.) For a violation of this act he was sentenced to pay a fine of three hundred dollars, with the alternative of imprisonment, and sued for and obtained a writ of *habeas corpus.* He contends that the penal statute in question' is violative of section 1 of the fourteenth amendment of the constitution of the United States and of section 1 of article I of the constitution of this state, and that the statute in question works an unwarranted invasion of his liberty.

It has come to be well recognized that the liberty and the pursuit of happiness in which the individual is protected by the constitution of the United States and of the state applies as fully to his right of contract, his right to follow a legitimate vocation, untrammeled by unnecessary regulations, as it does to the freedom from arrest or restraint of his person. This subject has received recent consideration by this court, and it is unnecessary to do more than refer to *Ex parte Dickey,* 144 Cal. 234, [103 Am. St Rep. 82, 77 Pac. 924].

Putting out of contemplation, therefore, the fundamental right of the government to subject private property to taxation and to take such property in time of public calamity and peril, the right of the state to impose burdens upon such property where the business is legitimate and innocuous,—in other words, to regulate harmless vocations,—is found in the police power alone. (*Young* v. *Commonwealth,* 101 Va. 853, [45 S. E. 327];· *Holden* v. *Hardy,* 169 U. S. 366, [18 Sup. Ct. 383].) The police power, deriving its existence from the rule that the safety of the people is the supreme law, justifies legislation upon matters pertaining to the public welfare, the public health, or the public morals. ((Cooley on Constitutional Limitations, 7th ed., p. 837; *Ruhstrat* v. *People,* 185 Ill. 133, [76 Am. St. Rep. 30, 47 N. E. 41].) But the legislature, under the guise of police regulations, cannot enact laws which do not pertain to one or the other of these objects, and which impose onerous and unnecessary burdens upon business and property. By this court it has been said (*Ex parte Whitwell,* 98 Cal. 73, [35 Am. St. Rep. 152, 32 Pac. 870]) : ''But it is not true that when this power is exerted for the purpose of regulating a business. or occupation which in itself is recog-

nized as innocent and useful to the community, the legislature is the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue such business or profession. As the right of a citizen to engage in such a business or follow such a profession is protected by the constitution, it is always a judicial question whether any particular regulation of such right is a valid exercise of legislative power. . . . This principle is stated very forcibly in the case of *Mugler* v. *Kansas,* 123 U. S. 661, [8 Sup. Ct. 273], in the following language: 'The courts are not bound by mere forms, nor are they to be misled by mere pretense. They are at liberty—indeed, are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution.' ''

The propositions here enunciated have received the sanction of all the courts and may not be gainsaid. Indeed, respondent upon this appeal does not dispute them but undertakes to show that the act in question is a legitimate exercise of the police power in that its object and purpose are to preserve and promote public health and public welfare.. His reasoning in this regard is, that from time to time the legislature has passed and this court has approved statutes providing for the quarantining of infected fruit, for the destruction of diseased fruit and fruit-trees, and for the compulsory care and preservation against disease of orchards, and it quotes this court's statement in *County of Los Angeles* v. *Spencer,* 126 Cal. 673, [77 Am. St. Rep. 217, 59 Pac. 203], to the following effect: ''It is known that the existence of the fruit industry in this state depends upon the suppression and destruction of the pests mentioned in the statute. The act in question is, therefore, a proper exercise of the police power, which the legislature has under section 1 of article XIX of the constitution, to subject property to such reasonable restraints and burdens as will secure and maintain the general welfare and prosperity of the state.'' From this respondent argues that

the effect of the act is (e. g.), that when apples are shipped to the markets of this state, properly labeled "Apples grown in Santa Cruz County," because of their known cleanliness and freedom from disease, such apples are permitted to pass local boards of commissioners, while at the same time, if apples are shipped from San Mateo County into Santa Cruz County bearing the label, the county of Santa Cruz can protect itself against the diseased fruit from the neighboring county. Still further, it is argued that the act would prevent the false labeling of fruit, and that the prevention of a general fraud is legitimately within the scope of the police power. But the difficulty with this argument is that the act clearly is not designed to accomplish any of these purposes, and is wholly inadequate to their accomplishment. The scope, the meaning and intent of an act must be gathered from its title and from its body. There is nothing in either the title or the body of this act which deals or pretends to deal with any of the difficulties which respondent mentions. If it is a question, as respondent contends, of the shipping of diseased apples, it would be simple enough for the legislature, and quite within its powers, to regulate or prohibit the transportation of such diseased fruit. If it were a question merely of deception in the label, the direct and efficacious method would be for the legislature to prohibit false labeling. None of these things, as we have said, does this act do or pretend to do. It requires merely that every shipment of every package of fruit, whether it be from the small farmer with few trees or vines, or whether it be from the large producer, must in every instance bear a label naming the county and immediate locality in which the fruit was grown. It is a matter of common knowledge that this requirement would work the absolute destruction of certain important branches of industry. Dried fruit, such as prunes, peaches, and apricots, are gathered in establishments in enormous quantities from the state over. These fruits when dried are assorted by grade and quality, and thus assorted and packed are shipped to the uttermost parts of the earth. It would absolutely prohibit this industry if these fruit-driers were compeleld to label each package with the names of the localities from which the fruit came, and if it did not absolutely prohibit it, it would render their business so onerous, complicated, and expensive as seriously to imperil

its existence. It is plain, therefore, that the act was not designed to prevent either false labeling or the shipping of diseased fruit, and, if so designed, it is both meaningless for this purpose and burdensome for all others. It seems quite apparent that the true purpose of the act was to obtain for the fruit-raisers of some well-advertised and favored localities, an advantage in the disposition of their own fruit. But this, for reasons well and elaborately set forth in *People v. Hawkins,* 157 N. Y. 1, [68 Am. St. Rep. 736, 51 N. E. 257], forms no part of the police power, and is wholly beyond the prerogative of the legislature.

It follows, therefore, that the act in question works an unconstitutional invasion of the prisoner's liberty and it is ordered that he be discharged.

McFarland, J., Lorigan, J., Angellotti, J., Van Dyke, J., and Shaw, J., concurred.