[Civ. No. 6760. First Appellate District, Division One.—July 9, 1929.]

A. MATTEI, Respondent, v. C. H. HECKE, as Director of Agriculture, etc., et al., Appellants.

'U. S. Webb, Attorney-General, Thomas H. Christiansen, Deputy Attorney-General, Glenn M. Devore, District Attorney, and Arthur C. Shepard, Deputy District Attorney, for Appellants.

Lewis H. Smith and Archie A. Smith for Respondent.

THE COURT.—This appeal involves the constitutionality of that portion of section 22 of "The California Fruit, Nut and Vegetable Standardization Act of 1927," which provides that grapes in containers other than those packed in sawdust, cork, etc., and in certain standard containers established by such act, shall, if used, be conspicuously marked in letters not less than one-half inch in height "Irregular Container."

The respondent, A. Mattei, is a grape grower and shipper in Fresno County. At the time the grapes were ready to ship during the fall of 1927 he had on hand certain lug boxes of dimensions different from those authorized to be used under the California Fruit, Nut and Vegetable Standardization Act of 1927, which he proposed to use for the shipment of some of his grapes, without putting on the boxes the words "irregular container," as required by section 22 of the act. He was warned by the department of agriculture of the state of California and by the horticultural commissioner of the county of Fresno that the use of such containers without the addition of the words "irregular container," as provided by the act, was in violation of law and that legal proceedings would be instituted against him if he persisted in using the boxes as he proposed to do and was then in

fact doing. Thereupon respondent filed a complaint for an injunction in the Superior Court of Fresno County against the director of agriculture of the state of California and the horticultural commissioner of Fresno County, whereby he sought to enjoin them from prosecuting him or causing him to be arrested, or preventing him from moving his grapes, or shipping them, or from condemning them, or from in any manner preventing him from packing or shipping his grapes in the containers that he proposed to use and was actually using—that is, containers differing from the standard crates and lugs provided for by the act and not having the words "irregular container" marked thereon.

The complaint is predicated on the premise that the proviso in section 22 of the act, requiring that containers of other sizes than those prescribed in the act which are permitted to be used, if used, must be conspicuously marked with the words "irregular container" in letters of a certain size, is unconstitutional.

At the time of filing the complaint the respondent, Mattei, obtained a temporary restraining order, which also ordered that appellants Hecke and Roullard show cause, at a time and place fixed by the order, why a preliminary injunction should not be granted as prayed for in plaintiff's complaint pending the final determination of the action. On September 3, 1927, the order to show cause came on for hearing. This hearing was upon the complaint and the demurrer and answer of the defendants thereto. It was stipulated by the parties that for the purpose of the hearing the allegations of plaintiff's complaint were admitted except the allegations that the act requiring grapes to be packed in the lugs or containers of the measurements required and the words "irregular container" so affixed to lugs containing grapes would mislead the trade and cause the purchaser to believe that the contents of the lugs were of inferior quality.

On December 1, 1927, the court made its order granting the temporary injunction, and from this order the appeal is taken.

Unquestionably an act such as we have here restricting the personal liberty of a citizen is invalid unless such restriction is necessary for the protection of the public safety, public health or public morals. As is said in *Ex parte Dickey*, 144 Cal. 234, 236 [103 Am. St. Rep. 82, 1 Ann. Cas.

428, 66 L. R. A. 928, 77 Pac. 924, 925]. "It appears, therefore, that the due exercise of the police power is limited to the preservation of the public health, safety and morals, and that legislation which transcends these objects, whatever other justification it may claim for its existence, cannot be upheld as a legitimate police regulation." It will, we think, be conceded that such restrictions cannot be upheld unless in their application they actually effect the object sought to be obtained.

Appellants state in their brief that the prevention of fraud and deception in the packing, marking, shipping and sale of fruits, nuts and vegetables is the basic reason for the act. The only provision relative to the packing and shipment of grapes contained in the act that would tend to prevent fraud and deception is the provision in section 22 that the net weight and name of the variety shall be marked in plain sight on the outside of each container, and with this provision of the act, it is conceded, respondent has and intends to comply. The other provisions of the act give the approximate size of the standard baskets and the dimensions, depth inside, width inside and length outside of the standard crate and standard lug box.

It becomes apparent on reading the statute that there is no cubic content provided for any of the respective containers in which grapes are to be packed. For the so-called standard basket referred to in subdivision 1, section 11, of the act, only *approximate* dimensions are given, and no cubic content is prescribed; and for the other eight varieties of crates or lugs in which shipment may be made there are provided *inside* dimensions in depth and width, but only *outside* dimensions in length. Hence, a variation in the thickness of the ends of any of the respective containers enumerated creates a variation in the cubic content of such respective containers. In addition, as suggested by counsel for respondent, a perforated, corrugated cardboard ventilator, many of which are now in use, taking up a space of one or more inches on the ends, sides or bottom of the container, if used, would materially affect the cubic content remaining for the product to be packed, and this is not attempted to be regulated or prohibited in any manner. The depth and width of the respective containers being prescribed by only inside dimensions and the length by only outside dimensions

there is no uniformity prescribed for either inside or outside size of the containers. There is no uniformity prescribed by the portions of the act as to the size or cubic content of the container, nor as to volume or weight of the product to be sold therein. Aside from all other considerations there is no measure attempted to be prescribed by which grapes may be sold and nothing—except the notice of net weight, which is not here complained of—which visualizes or presents to the purchaser the quantity of grapes he is purchasing. The seller may select any one of four crates and any one of four lug boxes, the crates themselves varying in inside depth from four inches to four and three-quarters inches, and the lug boxes varying in inside depth from four and one-quarter inches to five and three-quarter inches. There is nowhere any provision or attempted provision as to the weight or volume of grapes to be packed or shipped in any of the respective containers. The net weight and name of the variety required to be stamped on all the containers used is the only portion of the act which in any manner attempts to provide for the purchaser a statement or representation as to the quantity of grapes offered to him, and with this provision respondent has complied.

The liberty of the citizen and his manner of conducting his business or marketing his products may not be curtailed or interfered with except where it is necessary under the police power for the protection or preservation of the public health, safety or morals. "A statute prohibiting, regulating or interfering with private business can be upheld only under the police power, and the police power can be rightfully exercised only when the statute in question is for the protection of the public safety, the public health, or the public morals" (*Ex parte Drexel,* 147 Cal. 763 [3 Ann. Cas. 878, 2 L. R. A. (N. S.) 588, 82 Pac. 429]). "It is elementary that the enjoyment of property must not be interfered with or limited arbitrarily" (*In re Kelso,* 147 Cal. 609 [109 Am. St. Rep. 178, 2 L. R. A. (N. S.) 769, 82 Pac. 241] ; see, also, *Pacific Palisades Assn.* v. *City of Huntington Beach,* 196 Cal. 211, 216 [40 A. L. R. 782, 237 Pac. 538] ; *People* v. *Holder,* 53 Cal. App. 45 [199 Pac. 832] ; *Buford* v. *Boyd,* 178 Cal. 458 [174 Pac. 56]). As was said by Mr. Justice Field in *Slaughter-house Cases,* 16 Wall. (U. S.) 86 [21 L. Ed. 394] : "There is no more sacred right of citizen-

ship than the right to pursue unmolested a lawful employment in a lawful manner. It is nothing more nor less than the sacred right of labor.''

In *City of Buffalo* v. *Collins Baking Co.,* 39 App. Div. 432 [57 N. Y. Supp. 348], which is analogous on principle to the question here presented, the court held void an ordinance providing that all bread sold or offered for sale in the city of Buffalo, wherever baked, should be made into loaves weighing not less than one and one-half pound each, the court stating that no good to the public is apparent; that bread of the same composition weighing one pound is equally as wholesome as a loaf one-half pound heavier; that the ordinance was an interference with a lawful trade or avocation; that ''under the pretense of prescribing a police regulation, the state cannot be permitted to encroach upon any of the rights of the citizen, which the constitution intended to secure against abridgement.'' In *Frost* v. *City of Los Angeles,* 181 Cal. 22, 28 [6 A. L. R. 468, 183 Pac. 342, 345], the court uses this language: ''The legislature is possessed of the entire police power of the state, except as its power is limited by the provisions of the Constitution. But it cannot, under the guise of the police power, unreasonably interfere with a lawful and useful occupation or business, which is not inherently, or because of the manner in which it is carried on, injurious to persons or property, or to the public health, convenience, comfort, safety or morals (*Ex parte Whitwell,* 98 Cal. 73, 81 [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870]; *Ex parte Sing Lee,* 96 Cal. 354 [31 Am. St. Rep. 218, 24 L. R. A. 195, 31 Pac. 245]; *Los Angeles* v. *Hollywood Cem. Assn.,* 124 Cal. 349 [71 Am. St. Rep. 75, 57 Pac. 153]; *Ex parte McCapes,* 157 Cal. 29 [106 Pac. 229]; *In re Dart,* 172 Cal. 59 [Ann. Cas. 1917D, 1122, L. R. A. 1916D, 905, 155 Pac. 63])." In *Ex parte Hayden,* 147 Cal. 649, 650 [109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184, 82 Pac. 315, 316], the court says: ''The police power deriving its existence from the rule that the safety of the people is the supreme law, justifies legislation upon matters pertaining to the public welfare, the public health, or the public morals (citing authorities). But the legislature, under the guise of police regulation, cannot enact laws which do not pertain to one or the other of these objects, and which impose onerous and unnecessary burdens upon busi-

ness property."° In order to justify the state in interposing its authority the interests of the public generally must require such interference and such interposing of authority must be reasonably necessary for the accomplishment of the purpose, and where the police power is exerted to regulate a lawful business it is always a judicial question whether the regulation is a valid exercise of such power (*In re Smith,* 143 Cal. 368 [77 Pac. 180]). "If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those subjects, or is a palpable invasion of rights secured by fundamental law it is the duty of the courts to so adjudge and thereby give effect to the constitution" (*In re Dees,* 46 Cal. App. 656, 660 [189 Pac. 1050, 1052]).

We have read the cases cited by appellants and find they concern ordinances establishing net weights at which commodities may be sold or that net weights are required to be contained on the labels or packages, with the exception of *In re Fugii,* 189 Cal. 55 [207 Pac. 537], in which case petitioner was arrested for selling strawberries in containers holding one-half dry pint in violation of a statute providing that standard baskets for strawberries should be the dry pint. In that case the court took cognizance of the fact that strawberries are much larger than other varieties of berries, and that they are less uniform as to size and form and cannot therefore be placed as compactly in containers as other types of berries. The most pertinent basis for the decision in the Fugii case, however, was that the evidence introduced disclosed that the common practice in the sale of strawberries was to offer them for sale in trays holding either six pint baskets or six one-half pint baskets, the six baskets in either event filling the tray. Where one-half pint baskets were used, the surface area of strawberries exposed to the purchaser was the same as where full pint baskets were used. Therefore, the court held that an opportunity for deception existed which the provisions of the act in question obviated.

 Appellants in their brief state: "It must be assumed that the legislative body satisfied itself that deception was being practiced upon the public directly or indirectly concerning containers in which grapes were packed and shipped

and that the public was entitled to be protected in the matter to the end that a purchaser might rest assured, without investigation, when he bought a lug of grapes that he was getting a certain amount." We fail to see how marking the container in letters not less than one-half inch in height "irregular container" would assure the purchaser that he was getting a certain quantity of grapes, nor in what manner it would operate in the preservation of the public health, safety, morals or welfare. That the legislature was well-meaning in its passage of this legislation is no criterion or test of its validity. As was said in *Ex parte Jentzsch*, 112 Cal. 468, 473 [32 L. R. A. 664, 44 Pac. 803, 804] : "So, while the police power is one whose proper use makes most potently for good, in its undefined scope and inordinate exercise lurks no small danger to the republic. For the difficulty which is experienced in defining its just limits and bounds affords a temptation to the legislature to encroach upon the rights of citizens with experimental laws, none the less dangerous because well meant."

In our opinion the trial court was correct in its holding, and the order appealed from is accordingly affirmed.