[Crim. No. 2006.   Second Appellate District, Division Two.—October 21, 1930.]

In the Matter of the Application of GEORGE MEFFERD et al. for a Writ of Habeas Corpus.

(1)

William P. Redmond for Petitioners.

U. S. Webb, Attorney-General, Frank Richards, Alberta Belford and Clyde P. Harrell, Jr., Deputies Attorney-General, Erwin P. Werner, City Attorney, George A. Dockweiler, Deputy City Attorney, Charles P. Johnson, City

Prosecutor, and Joe W. Matherly and John L. Bland, Deputies City Prosecutor, for Respondent.

SCHMIDT, J., *pro tem.*—In the municipal court of the city of Los Angeles petitioners were jointly charged and convicted under count one of complaint No. 11775 of unlawfully labeling grapefruit in violation of section 9 of the California Fruit, Nut and Vegetable Standardization Act, as amended in 1929 (Stats. 1929, p. 104); under count two, of unlawfully selling and offering for sale grapefruit containers, subcontainers and wrappers upon which were alleged false statements in violation of section 10 of the same act, as amended in 1929 (Stats. 1929, p. 105); under count three, of labeling for sale and offering for sale deceptive pack of fresh grapefruit by mislabeling said grapefruit "Imperial" as "Imperial Valley Grapefruit" and under another complaint of unlawfully picking, causing to be picked, sold and offered to be sold and/or transported grapefruit the juice of which said grapefruit did not at the time same was sold and offered for sale contain soluble solids equal to or in excess of five and one-half parts to every part of acid contained in said juice, the said grapefruit not having remained on the trees after June 1st of the season in which it was picked, in violation of section 20 of the aforementioned act as amended in 1929 (Stats. 1929, p. 1585).

From the judgments of conviction in the municipal court petitioners appealed to the appellate department of the superior court, which court affirmed the convictions. Whereupon petitioners obtained a writ of *habeas corpus* from this court.

Appellants contend that the California Fruit, Nut and Vegetable Standardization Act of 1927 (Stats. 1927, p. 1845), and amendments thereto in 1929 (Stats. 1929, pp. 102, 177 and 1585) in so far as it applies to grapefruit, and each provision thereof, is invalid, illegal, unjust, unreasonable, discriminatory, oppressive, in restraint of trade, taking property, destroying the same, confiscating same without due process of law and without compensation therefor, granting privileges to some and not to all, an arbitrary law without a lawful purpose and without legislative police power or right, and therefore unconstitutional.

The single question calling for determination is whether or not the act, in so far as its provisions refer to grapefruit, is constitutional.

A perusal of the preamble of the act shows the intent of the legislature in enacting the statute to be (1) to promote the development of the California fruit, nut and vegetable industry in state, interstate and foreign markets, (2) to protect the state's reputation, (3) to establish standards and standard containers, (4) to prevent deception in packing, marketing and sale of fruits, etc.

Section 20 of said act, as amended, provides:

"For the purpose of this section of this act the state shall be divided into districts as follows: .

"District 1. That part of the state south of the San Gorgonio pass in Riverside County and east of the Sierra Nevada range, comprising parts of the counties of Riverside and San Diego and all of Imperial County.

"District 2. All of the state excepting the part included in district 1.

"Citrus fruits, when being packed, or after packing, or when delivered for shipment, loaded, shipped, or being transported offered for sale or sold in any container or subcontainer, or in bulk, shall conform to the following standard:

"Standard for Citrus Fruits. Citrus fruits shall be mature, virtually free from marked evidence of freezing injury, free from decay and from serious damage caused by splits, cuts, bruises, stem or thorn punctures, or by drying at the stem or blossom end; and in the case of packed citrus fruits shall be virtually uniform in size; provided, that, with the exception of freezing injury, not more than ten per cent, by count, of the citrus fruits in any one container, or in any lot in bulk, may be below these requirements, but not to exceed one-half of this tolerance, or five per cent, shall be allowed for any one cause, provided, further, that any packed, wrapped citrus fruit which has been in storage or shipped by rail and which fails to meet the requirements of this standard only by reason of brown rot, blue mold or green mold which has occurred after packing, shall not be held for violation of the provisions of this act on account of such deterioration.

"Grapefruit Maturity. Grapefruit shall not be deemed mature under the provisions of this act unless the juice contains soluble solids equal to or in excess of six parts to every part of acid contained in the juice, the acidity of the juice to be calculated as citric acid without water of crystallization; provided, that the grapefruit have attained at least twenty-five per cent of yellow color before picking; provided, further, that grapefruit produced in district two shall be deemed mature under the provisions of this act if the juice contains soluble solids equal to or in excess of five and one-half parts to every part of acid contained in the juice; provided that the grapefruit have attained at least twenty-five per cent of yellow color before picking; provided, however, that grapefruit remaining on the trees after June 1 of each season shall be deemed mature irrespective of analysis of the juice."

There can be no question that an act such as the one here under consideration, if it restricts personal liberty of a citizen, is invalid unless such restriction is necessary for the protection of the public safety, public health or public morals. As was said in *Ex parte Dickey,* 144 Cal. 234, 236 [103 Am. St. Rep. 82, 1 Ann. Cas. 428, 66 L. R. A. 928, 77 Pac. 924]: "That the due exercise of the police power is limited to the preservation of the public health, safety, and morals and that legislation which transcends these objects, whatever other justification it may claim for its existence, cannot be upheld as a legitimate police regulation." Nor can such restrictions be upheld unless in their application they actually effect the object sought to be obtained. Nor can the legislature under the guise of police regulations enact laws which do not pertain to one or the other of these objects and which impose onerous and unnecessary burdens upon business and property. As was said in *Ex parte Whitwell,* 98 Cal. 73 [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870]: "But it is not true when this power is exerted for the purpose of regulating a business or occupation, which in itself is recognized as innocent and useful to the community, the legislature is the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizens to pursue such business or profession. As the right of a citizen to engage in such a business or follow such a profession is protected by the Con-

stitution, it is always a judicial question whether any particular regulation of such right is a valid exercise of legislative power.''

Respondent contends that the validity of legislation of the character here presented has been determined by our Supreme Court and cites *Ex parte Kohler*, 74 Cal. 38 [15 Pac. 436], and *Ex parte Hayden*, 147 Cal. 649 [109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184, 82 Pac. 315], to the proposition ''that legislation having for its object the protection of the purchasing public by requiring the proper labeling of articles of food for human consumption is indeed constitutional and a proper exercise of the police power of the state''. This proposition was enunciated in each of these cases and yet each case was decided upon other grounds. *Ex parte Kohler* is of no help on the question involved in this proceeding. *Ex parte Hayden*, however, in our opinion, is determinative of this case. That case is very similar to the one at bar; it was one in which the statute required that all fruit shipped or offered for shipment in this state shall have stamped on the container ''a statement directly and correctly designating the county and immediate locality in which such fruit was grown''. (Stats. 1903, p. 338.) The defendant in that case was charged with shipping apples in violation of the act. At page 652 of the Hayden case it was said: ''It requires merely that every shipment of every package of fruit, whether it be from the small farmer with few trees or vines, or whether it be from the large producer, must in every instance bear a label naming the county and immediate locality in which the fruit was grown. It is a matter of common knowledge that this requirement would work the absolute destruction of certain important branches of industry. . . . It seems quite apparent that the true purpose of the act was to obtain for the fruitraisers of some well-advertised and favored localities an advantage in the disposition of their own fruit. But this, for reasons well and elaborately set forth in *People* v. *Hawkins*, 157 N. Y. 1 [68 Am. St. Rep. 736, 42 L. R. A. 490, 51 N. E. 257] . . . forms no part of the police power, and is wholly beyond the prerogative of the legislature.''

An examination of the aforementioned section 20 of the California Fruit, Nut and Vegetable Standardization Act shows that the state is divided into two districts and

describes grapefruit maturity as follows: "Grapefruit shall not be deemed mature under the provisions of this act unless the juice contains soluble solids equal to or in excess of six parts to every part of acid contained in the juice, the acidity of the juice to be calculated as citric acid without water of crystallization; provided, that the grapefruit have attained at least twenty-five per cent of yellow color before picking; provided further, that grapefruit produced in district two shall be deemed mature under the provisions of this act if the juice contains soluble solids equal to or in excess of five and one-half parts to every part of acid contained in the juice; provided that the grapefruit have attained at least twenty-five per cent of yellow color before picking; provided, however, that grapefruit remaining on the trees after June 1 of each season shall be deemed mature irrespective of analysis of the juice." The standard of maturity for grapefruit in district one is that the juice shall contain *"soluble solids equal to or in excess of six parts to every part of acid contained in the juice"*, while in district number two the juice shall contain *"soluble solids equal to or in excess of five and one-half to every part of acid contained in the juice"*. (Italics ours.) Under this provision, whatever grapefruit may be grown in district number two, if properly labeled may be sold and consumed in district number one and such sale is not unlawful. How can the public welfare or the public health possibly be affected or benefited by having these two standards when it is not unlawful to sell grapefruit of the lesser standard? This brings it clearly within the terms quoted from *Ex parte Hayden, supra.* Such classification is neither natural nor reasonable.

A portion of section 20 further provides that the grapefruit shall "have attained at least twenty-five per cent of yellow color before picking". This provision is uncertain and indefinite. Who shall say what constitutes "at least twenty-five per cent of yellow color"? Does it import that the fruit shall have progressed, all over its surface, twenty-five per cent toward a yellow color, or that twenty-five per cent of its surface shall be yellow, the remaining seventy-five per cent being some other color? No one can tell. Moreover, we take judicial notice of the fact that grapefruit is never yellow. For that reason, especially, no standard is fixed by the act.

Section 20 closes with these words: "provided, however, that grapefruit remaining on the trees after June 1 of each season shall be deemed mature irrespective of analysis of the juice". If it is lawful to sell the grapefruit that has remained on the trees after June 1st of each season irrespective of the analysis of the juice, then why any standard of test of the juice?

■ Section 13 of the act (Stats. 1929, p. 102) provides as follows:

"No provision of this act, except as hereinafter provided in section 21, shall be construed to prevent a grower of fruits, nuts or vegetables in the State of California from selling or delivering the same unpacked and unmarked, as a part of his crop in bulk to a packer for grading, packing or storage; or to prevent a grower or packer from manufacturing the same into any by-product, or from selling the same unpacked and unmarked to any person, firm, company, organization or corporation actually engaged in the operation of a commercial by-products factory for the sole and express purpose of being used in the State of California in the manufacture of a by-product for resale."

This section readily shows that it is class legislation, for it excludes the grower on any sales that he may make, but provides penalties for anyone making sales other than the grower. The provisions of a similar section under the same act were held unconstitutional in *Mattei* v. *Hecke,* 99 Cal. App. 747 [279 Pac. 470].

It follows, therefore, that those provisions of the California Fruit, Nut and Vegetable Standardization Act which petitioners were charged with violating and convicted in the municipal court, and in so far as such provisions apply to grapefruit, are discriminatory and unreasonable and therefore violative of section 11, article I, of the Constitution of this state. It amounts to the taking of property without due process of law.

No other questions raised need be discussed.

Petitioners are and each of them is discharged.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 31, 1930, and the following opinion then rendered thereon:

THE COURT.—■ Petition denied for the reason that there is no provision of law warranting a rehearing in a matter such as the instant case.

A petition to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was granted by the Supreme Court on November 20, 1930, and thereafter on May 1, 1931, the Supreme Court filed an opinion declaring the California Fruit, Nut and Vegetable Standardization Act of 1927 to be proper and valid exercise of the police power. Thereafter on May 28, 1931, the Supreme Court granted a rehearing and on December 9, 1931, the following opinion, dismissing the application for a hearing in the Supreme Court, was filed:

WASTE, C. J.—In a criminal action commenced by the filing of a complaint in the municipal court of the city of Los Angeles the petitioners, George Mefferd and Joseph Waldman, were convicted of violating certain provisions of the Fruit, Nut and Vegetable Standardization Act. (Stats. 1927, p. 1845.) Contending that the act is unconstitutional and void, the petitioners appealed to the appellate division of the superior court from the judgment of conviction. The judgment was affirmed and the petitioners applied to the District Court of Appeal (Second Appellate District, Division Two) for a writ of *habeas corpus,* which was granted. In a written opinion that court declared the act to be unconstitutional and discharged the petitioners from custody. The attorney-general thereupon made application to this court for a hearing, which was allowed. On May 1, 1931, this court filed its opinion declaring the Fruit, Nut and Vegetable Standardization Act to be a proper and valid exercise of the police power, and the petitioners were remanded to the custody of the sheriff of the county of Los Angeles. ■ On a petition for rehearing the petitioners urged, for the first time, that the Supreme Court was without jurisdiction to review an order of the District Court of Appeal discharging a defendant from custody on *habeas corpus,* when the charge of which the defendant stands convicted originated by way of complaint as distinguished from a charge having its inception in an indictment or an information. In support of this contention the petitioners cited *In re Zany,* 164 Cal. 724, and section 1506 of the

Penal Code. In substance, petitioners contended in their application for rehearing that, under the Zany decision, *supra*, and prior to the passage of section 1506 of the Penal Code, this court was without jurisdiction to review an order of the District Court of Appeal discharging a defendant from custody, and that section 1506, added to our Penal Code in 1927 (Stats. 1927, chap. 628), provides for such a hearing only when the defendant is discharged after conviction prosecuted by indictment or information. The practice of presenting points for the first time on rehearing is not to be encouraged, but, because another cause involving the same legal question was pending in the court, we granted a rehearing, in order that this jurisdictional question might be fully presented and considered. After granting the rehearing we handed down a decision in *In re Page* (Nov. 25, 1931), 214 Cal. —— [5 Pac. (2d) 605], in which proceeding the identical point here involved was presented. In that case we held that this court is without jurisdiction to review an order or decision of the District Court of Appeal, discharging a defendant from custody on *habeas corpus*, when the charge of which he stands convicted was prosecuted by way of complaint. The decision in the Page proceeding decides the point here involved.

The application for a hearing in the Supreme Court is dismissed, and the petitioners are ordered discharged from custody, as directed by the District Court of Appeal.

Shenk, J., Preston, J., Curtis, J., Richards, J., Seawell, J.; and Langdon, J., concurred.