[Crim. No. 253.   Fourth Appellate District.—September 25, 1933.]

In the Matter of the Application of BARTLETT H. HAYES, for a Writ of Habeas Corpus.

Albert H. Ford for Petitioner.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—Upon application of the petitioner a writ of *habeas corpus* was issued by the Supreme Court and made returnable before this court.

It appears that petitioner was arrested and is being detained under a warrant based upon a complaint filed in the Justice Court of Riverside Township, County of Riverside, in which he is charged in four separate counts with violations of section 11 of The California Fruit, Nut and Vegetable Standardization Act of 1931 (Stats. 1931, p. 1459). In two counts he is charged with mislabeling certain grapefruit by marking the wrappers thereof with the word "Coachella" and by stamping the word "Coachella" upon each individual grapefruit and thereafter offering the same for sale, thereby representing the same to be grapefruit that had been grown and raised in the Coachella Valley when in truth and fact said grapefruit had been grown in San Bernardino County. In the other two counts he is charged with mislabeling certain containers of grapefruit by the repeated use of containers which were labeled "Pure Gold-Coachella Valley Grape Fruit—Sweet Seedless—Grown and packed by Coachella Valley Citrus Association—Thermal, Riverside County, California," without completely removing, erasing or obliterating said markings, it being further charged that he then and there offered for sale grapefruit in such mislabeled containers, well knowing that said markings did not properly or accurately apply to the fruit repacked therein, in that the said fruit was grown in

San Bernardino County and not in the Coachella Valley and that the same was not packed by the Coachella Valley Citrus Association.

The pertinent portion of section 11 of this act, under which petitioner is charged, reads as follows:

"Sec. 11. It is unlawful to prepare, deliver for shipment, load, ship, transport, offer for sale or sell a deceptive pack, bulk lot, bulk load, load, arrangement or display of fresh or dried fruits, nuts or vegetables, or to mislabel any container of fresh or dried fruits, nuts or vegetables, or the label or lining of any such container, or the wrapper of any fruit, nut or vegetable, or any fruit, nut or vegetable, or any placard used in connection therewith having reference to such fresh or dried fruit, nuts or vegetables. This provision shall be construed to prohibit the repeated use of any container or subcontainer of fruits, nuts or vegetables, bearing any markings, or any designations of brand, quality or grade, unless all such markings which do not properly and accurately apply to the products repacked or replaced therein shall first be completely removed, erased or obliterated. . . . "

The first point raised by petitioner is that section 11 of this act is unconstitutional and void as being arbitrary and unreasonable. This argument is based upon the contention that the mislabeling provisions of that section are not thereby limited in their application to such fruit as is offered for sale or sold or marketed; that the same are made applicable to all fruit without regard to its actual or intended use or disposition; and that the same apply equally to fruit intended for sale and to fruit intended and destined for the private use of the one doing the labeling. It is urged that the act in this respect is too broad in that it forbids such mislabeling and such misleading statements without regard to whether the same are intended or used for the purpose of deceiving others.

The petitioner relies upon *Ex parte Hayden,* 147 Cal. 649 [82 Pac. 315, 317, 109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184], *In re Fujii,* 189 Cal. 55 [207 Pac. 537, 539], *Mattei* v. *Hecke,* 99 Cal. App. 747 [279 Pac. 470], and *In re Mefferd,* 110 Cal. App. 1 [292 Pac. 988, 6 Pac. (2d) 71]. None of these cases are decisive of the question now before us. In the last-named case, the provisions of the Fruit, Nut and

Vegetable Act as amended in 1929, with the violation of which the petitioner there was charged, were held unconstitutional. While the charges in that case included one of mislabeling under section 10 of that act, the opinion is based largely upon the proposition that no natural or reasonable basis existed for a discrimination said to be contained in section 20 of that act, relating to the matter of proper maturity of grapefruit offered for sale. A hearing was granted in the Supreme Court and an opinion filed (which was later set aside for another reason) in which the Supreme Court upheld the constitutionality of section 10 of the act as amended in 1929, the opinion observing that the legislature had precisely followed the court's suggestion in the case of *Ex parte Hayden, supra,* in which case the court said: "If it were a question merely of deception in the label, the direct and efficacious method would be for the legislature to prohibit false labeling."

The essence of petitioner's claim is that under section 11 of the act now under consideration, the provisions against mislabeling are not confined in their application to fruit offered for sale or placed upon the market. While section 11 of the present act is more comprehensive than the similar section 10 of the prior act as amended in 1929, in the respect now under consideration the language used in the former section 10 was not more favorable to the petitioner than is the language of the present section 11.

As was said in *Ex parte Hayden, supra:* "The scope, the meaning and intent of an act must be gathered from its title and from its body." The title of the present act is as follows:

"An act to prevent fraud and deception and to protect the general welfare by establishing standards and standard containers for certain fruits, nuts and vegetables; and to that end regulating the sale, offer for sale, shipment, transportation, loading, packing, marking and disposal of fruits, nuts and vegetables; and repealing certain acts therein named."

Section 7 of this act, enumerating what fruit shall conform to the act, makes the same applicable to all fruits that are packed or delivered for shipment or shipped or offered for sale or sold in bulk or otherwise. The plain meaning of the first part of section 11 is that it is unlawful to prepare

for market, offer for sale, or sell a deceptive parcel of fruit, following which, in the same sentence, it is made unlawful to mislabel any fruit, its label or container. The latter provision is then construed to prohibit the repeated use of containers in such a manner as to constitute mislabeling. In our opinion, the fact that the matter of shipping, offering for sale or selling is not repeated in that portion of the sentence relating to mislabeling is not fatal to the act in the respect here claimed. Not only the entire sentence but the entire section must be read together, and so read the highly technical construction contended for seems neither necessary nor proper. As was said in *In re Fujii, supra:*

"With the policy of the law we have not to deal, but it may be said that acts of this character having for their purpose the protection of the purchasing public by the elimination of deceptive methods in the marketing of products are beneficial in a high degree and that such acts are to be liberally construed so as to give effect to their salutary regulations."

The word "deceptive" in the fore part of the section relates to some half dozen of the usual methods of selling or offering for sale fruit in varying quantities; the word "mislabel" carries with it the idea of an intent to deceive; a similar intent and intention is involved in the provisions for bidding the repeated use of containers containing markings not properly applying to the products repacked therein; and all of these provisions are related to the usual and ordinary steps of preparing fruit for market. In common experience fruit is labeled only for the purpose of sale and disposal, and mislabeling of the same can in a practical sense, relate only to its preparation for sale and the deception of others. It abundantly appears from the title and body of the act that the sole purpose of this section is to protect the purchasing public by the elimination of certain deceptive methods in the marketing of those products covered thereby. The language of the act is sufficient to inform the ordinary man that the mislabeling prohibited is that used in the marketing of the products named, and it seems obvious that the section was not intended to apply to cases where fruit is privately consumed without deceiving others. As the court said in *People* v. *Earl,* 19 Cal. App. 69 [124 Pac. 887, 888]:

"The function of the courts in construing statutes is not constricted to a view which shall give literal effect to every word and phrase appearing by the letter of the law. In that analysis reason must have its just proportion, and the intent of the law-makers is to be ascertained by taking into account several considerations, as: the history of the legislation upon the subject treated of, and concurrent legislation affecting the same or closely kindred subjects. The fact that the enforcement of a statute according to its literal import will have the effect of prohibiting otherwise necessary and useful acts may also furnish an entirely sufficient reason for concluding that the intent of its framers was not that it should so operate. Our Supreme Court, in *Ex parte Lorenzen,* 128 Cal. 431 [79 Am. St. Rep. 47, 50 L. R. A. 55, 61 Pac. 68], has declared the rule thus: 'But for the more substantial objection that the ordinance by its terms would oppress and lead to the conviction of persons guilty of no fraudulent act, it is to be remembered that the letter of a penal statute is not of controlling force, and that the courts, in construing such statutes, from very ancient times have sought for the essence and spirit of the law and decided in accordance with them, even against express language; and in so doing they have not found it necessary to overthrow the law, but have made it applicable to the class of persons or the kind of acts clearly contemplated within its scope.' As an illustration, the old Bologna law, which provided in literal terms for the punishment of a person who should let blood in the streets and which was held not to apply to a barber performing the office of a surgeon, is given, among others. This expression of Mr. Justice Field, used in *United States* v. *Kirby,* 7 Wall. 482 [19 L. Ed. 278], is also quoted: 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character.' "

In our opinion, the provisions of section 11 of this act are neither arbitrary nor unreasonable. The only requirement is that such articles as are covered, if labeled at all, shall not be so labeled as to mislead and deceive the public. In the case of *In re Bear,* 216 Cal. 536 [15 Pac. (2d) 489, 490,

83 A. L. R. 1402], the court quoted with approval from *Parrott* v. *Benson*, 114 Wash. 117 [194 Pac. 986]: "We cannot hold anything to be unjust discrimination or unreasonable restriction which requires merchandise to be sold for just what it is, and prevents its sale as something other than it is."

██ The only other point presented is that the use of the word "Coachella" as alleged was not a false representation but was only a statement as to the quality of the fruit. It is argued that the legislature itself, in section 18 of this act, in districting a part of the state, has associated the Coachella Valley with grapefruit having 6 per cent juice when 25 per cent colored, and that the legislature has thereby made the word "Coachella" synonymous with grapefruit meeting the 6 per cent test when 25 per cent colored. It is therefore argued that it is permissible for any grower to mark his grapefruit "Coachella" when the same contains 6 per cent juice when 25 per cent colored. Not only is the language used in section 18 of the act not susceptible of this construction but the matter of mislabeling is not dependent on whether the article so marked is of the same or equal quality with the article imitated. It is entirely a question of deception and the buyer has the right to know what he is purchasing (*United States* v. *100 Cases of Tepee Apples*, 179 Fed. 985; *In re Bear, supra*). It can hardly be questioned in the present case that the use of the word "Coachella" was designed to and would naturally tend to mislead any purchaser of the fruit thus packed. In any event, if we are correct in our holding upon the first point raised, a holding in favor of the petitioner upon this point would not entitle him to a discharge.

For the reasons given, the writ is discharged and the petitioner remanded.

Marks, J., and Jennings, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 23, 1933.