[Civ. No. 8223. Third Dist. June 5, 1953.]

PARACO, INC. (a Corporation) et al., Appellants, v. DE-
PARTMENT OF AGRICULTURE et al., Respondents.

350

Rowell, Lamberson & Thomas for Appellants.

Edmund G. Brown, Attorney General, and Paul M. Joseph, Deputy Attorney General, for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment entered after demurrer sustained without leave to amend. The complaint contains two counts. One asks an injunction restraining respondents from enforcing against appellants the provisions of sections 20800 to 20806, inclusive, and 20843, of the Business and Professions Code, which sections deal with the sale of lubricating oils. These sections declare that crankcase drainings, lube distillate or any other petroleum product shall not be sold for use as lubricating oil in an internal combustion engine unless free from water or suspended matter and possessing certain flash point ratings; that if lubricating oil sold has been previously used for lubrication of such engines, or gears or shafts attached thereto or for any lubricating use or has been rerun or filtered, redistilled or claimed the container shall be labeled "reclaimed motor oil" or "lubricating oil reclaimed" in red letters of specified type and size; that anyone who buys, sells or stores lubricating oil required to be so labeled shall keep records of purchases, sales and storage. The second count in the complaint asks declaratory relief based upon a claim that the code sections are so uncertain and unintelligible that plaintiffs are unable to know what the law requires them to do in order to avoid violation thereof. The factual allegations of both counts are identical.

■ Upon an appeal from a judgment entered after a demurrer sustained, all the allegations of the pleading which are well pleaded must be taken as true and additional facts of which judicial notice may be taken will also be considered though not pleaded. (*Talley* v. *Northern San Diego Hospital Dist.*, 41 Cal.2d ——, —— [257 P.2d 22].) The several appellants own and operate petroleum refining plants; a large part of their businesses consist in collecting used lubricating oils, re-refining them and selling them under established brands at prices from 30 to 50 per cent lower than prices of virgin stock oils sold by others; appellants' oils exceed the minimum standards required by the code for lubricating oils; although the sections requiring used oils to be labeled before sale, as reclaimed oils, have long been in the code, yet respondents made no attempt to enforce the labeling provisions because it was impossible to determine by any test whether an oil was virgin stock or re-refined; since 1949, however, and since the enactment of code section 20806, which requires record keeping, respondents are demanding of appellants that they keep such records and do the required labeling of their re-refined oils, and are threatening criminal prosecution if appellants fail to do so; re-refined oil, such as is marketed by appellants, is not merely a reclaimed oil, but is an oil which has been completely re-refined by being subjected by appellants to many more steps than are involved in mere reclaiming; the word "reclaimed" is understood by the public as a synonym for the word "inferior" and the enforcement of the labeling law would ruin appellants' market and do them irreparable injury; to label appellants' oils as "reclaimed" would in fact mislead the public because of the public's understanding that reclaimed oils are inferior and thus cause them to refuse to buy high quality re-refined oil not inferior in any respect; appellants' oils are in fact equal to the best, and superior to many, of the virgin stock oils; enforcement of the law, by making it difficult, if not impossible, to market re-refined oil once used, would result in the waste of a valuable asset and prevent conservation of limited underground petroleum stocks; by lessening the sale of re-refined oils the producers of virgin stock oil could easily maintain high prices to the detriment of the public; out of state re-refiners who ship their oils to this state are not subject to the record keeping requirements of our law and are thus immune to the labeling requirements because of the impossibility of detecting re-refined oil from virgin stock oil, and the enforcement of the law would benefit

them at the expense of appellants and others engaged in producing and selling re-refined oils in the state; the code requires not only that oil once used be all labeled "reclaimed" before being sold again, but also requires that any blends of products consisting in part of such oils be so labeled and these provisions are made applicable also to oil that has not been used but has been rerun or refiltered or redistilled, thus introducing such doubt into the meaning of the legislation as to make it impossible for appellants to know when they are complying therewith. Both counts in the complaint allege that by reason of the foregoing facts the statutory provisions and their enforcement deprive appellants of liberty and property without due process of law, deny to them the equal protection of the law and deprive them of equal privileges and immunities of the law; that said sections further grant privileges to certain persons while unreasonably discriminating against appellants; that they do not have a uniform operation and are fatally vague and uncertain.

All parties hereto agree that the general subject matter of the legislation attacked as being unconstitutional, that is, the regulation of the sale of petroleum products, is within the police power of the state and that the subject statutory provisions constitute an attempt on the part of the Legislature to protect the public from fraud, deception and misrepresentation in the sale of such products. All parties further agree to the general limits of the constitutional exercise of the police power in that the power cannot be exercised unreasonably and that all police regulations must be reasonable under all circumstances. (11 Am.Jur. "Constitutional Law," § 302.) "In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power. A statute to be within this power must also be reasonable in its operation upon the persons whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive." (11 Am.Jur., *supra*; *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479].) It is precisely within this field of reasonable exercise of the police power that the parties are at issue.

Taking the allegations of the complaint at their full face value, as we must, the position of appellants may be briefly stated in this way: They are selling lubricating oil which, while it has been used at least once and perhaps many times, is by reason of the rectification processes to which they subject

it equal to the best and superior to many of the virgin stock lubricating oils. Their product, when readied for sale by them, is incapable of being distinguished from virgin stock oils by any scientific tests. Oil, they allege, is not worn out by use, and in fact is not changed thereby, nor is it deteriorated except in ways completely rectified by their re-refining processes. It picks up impurities during use which are removed by appellants just as impurities are removed from crude in the process of making refined lubricating oils from the natural product. These impurities they remove and thus restore the oil so that it is the same oil as the virgin stock oil which was first put to use. Therefore, they say, that if the buyers asked for virgin stock oils at the market place and the products of appellants were sold to them they would not be damaged in any way since what they bought would be just as good as, or better than, that for which they asked. Following out this argument, they say that to compel them to place upon their product a name which in the eyes of the buying public brands it as inferior is to compel them to misbrand their product and is an unreasonable, unnecessary and arbitrary exercise of the police power to their detriment.

It is a matter of judicial knowledge that the state is dotted with retail establishments for the sale to the public of lubricating oils for use in internal combustion engines; that severally these outlets are almost uniformly engaged in selling a single brand of lubricating oil. One will sell Standard, another Shell, another Union and so on through the rather extensive list of great corporations engaged in the manufacture and sale of petroleum products of various kinds, including lubricating oils; that generally the buying public expect in these service stations, so called, to buy, and without material exception they are sold, lubricating oils that have never before been used.

With this wide market in which oil never before used is being sold, appellants are in competition. Their business is legitimate and we assume, as we must, that their business is honestly conducted; that the quality of their product is high; and that they serve a most useful purpose in the rectification and resultant reuse and conservation of a limited natural resource. But granting all this, we come to the rock upon which the appellants' ship must founder so far as is concerned the constitutionality of the statutes which they attack.

That rock is this: The public have a right to know what

they are buying. If this great buying public, consisting in this state of many millions of motorists and other users of lubricating oils, want to buy oils never before used they have a right to do so and appellants have no constitutional right to sell them something else against their will. ■ "It is too plain for argument that a manufacturer or a vendor has no constitutional right to sell goods without giving to the purchaser fair information of what it is that is being sold." (*Corn Products Refining Co.* v. *Eddy*, 249 U.S. 427, 431 [39 S.Ct. 325, 63 L.Ed. 689, 693]; see, also, *Kentucky Whip & Collar Co.* v. *Illinois Cent. R. Co.*, 299 U.S. 334 [57 S.Ct. 277, 81 L.Ed. 270].) ■ " 'We cannot hold anything to be unjust discrimination or unreasonable restriction which requires merchandise to be sold for just what it is, and prevents its sale as something other than it is.' . . . It is entirely a question of deception and the buyer has the right to know what he is purchasing." (*In re Hayes*, 134 Cal.App. 312, 318 [25 P.2d 230], quoting from *In re Bear*, 216 Cal. 536, 541 [15 P.2d 489, 83 A.L.R. 1402].) In *Parrott & Co.* v. *Benson*, 114 Wash. 717 [194 P. 986, 987], where the statute attacked involved eggs imported from China, the court said: "While there is some evidence in the record tending to show that eggs imported from China are wholesome and equal to the domestic product, except in size, yet there is much tending to the contrary, purporting to show conditions under which eggs are produced, handled, and shipped, which might well justify the consumer in exercising a choice between domestic and such foreign eggs, and all this act can do is to identify imported eggs, either as eggs or as ingredients in other merchandise, so as to permit of such choice. Surely if the foreign egg is entirely fresh and wholesome when placed upon our market, it can stand upon its own merits and win its way to popular favor under its true designation."

Appellants say that they do not in reality quarrel with the cases hereinabove cited or with many others that might be cited to the same effect, but they say that in all these cases there were good reasons why the buying public would want to exercise a choice, which choice was denied them unless the labeling provisions of the legislation there involved were enforced. Here they say, however, there are no such reasons why the buying public should want to exercise a choice and they refer to the allegations concerning the excellence of their product and its actual identity with virgin stock oils. ■ Nevertheless we think the principle is still applicable

that legislation is reasonable and appropriately necessary which requires merchandise to be sold for just what it is wherever, as here, there is great danger that those wishing to buy one kind of merchandise will be misled through want of labeling into buying something which they do not desire, and we think it makes no difference that this desire for one as against the other is founded entirely upon prejudice, which, in turn, is founded on ignorance. ▉ While actionable fraud would not result under the allegations of the pleading here if the buyer, intending to buy virgin stock oil, was led into buying oil that had been used, since we must accept the allegations that the products are identical and that appellants' products in particular are equal to the best available, yet if, in view of the state-wide market of virgin stock oils, the want of labeling as to appellants' oils will result in the buyers' getting that which they do not want to buy, then deception and fraud has resulted; for it is deceptive and fraudulent, through concealment, to sell a man against his will what he does not want to buy and thinks he is not getting. ▉ The Legislature, we think, was well within its powers in requiring appellants and all those engaged in re-refining and marketing oil that has been used to label their product in such a way that it must stand upon its own merits, win its way in the market and be sold for what it is.

Appellants further argue and have alleged that the labeling requirements are in themselves misleading; that their product is not reclaimed oil and they point to their allegations that their re-refining processes restore the oil to its original condition and quality so that it is not in truth and in fact reclaimed. The statute does require that their product be labeled "reclaimed," but we think that herein we need not accept their allegations as constituting facts well pleaded, for when the Legislature required the product to be labeled "reclaimed" wherever the oil had been used they selected a word which fairly described that product. The word means to regenerate, to redeem, to recover, to restore. (Webster's Intl. Dict.) ▉ Appellants' allegations that they take oils that have been used and through use have become impure and unfit for use and by their processes restore them to their original state of purity and high quality are allegations that they have reclaimed them. Such oils are reclaimed. And finally on this subject if there is in the minds of the public, as is alleged, an unfounded and superstitious prejudice against reclaimed oil, appellants, in engaging in the reclamation and

marketing of used oils, must temporarily bear the burden of this prejudice until, through the continued excellence of their product, aided by the substantial price differential favorable to them, they have gained the public's confidence, at least so far as their own established brands be concerned. ■■■ The classification of lubricating oils on the market into virgin stock oils and reclaimed oils is, in view of the evils sought to be remedied, that is, the prevention of deception, a reasonable classification. For if we accept the allegations of plaintiffs' complaint, there is no way whereby the buying public who want oil that has never been used, in preference to that which has been used and reclaimed for further use, can know which they are getting. ■■■ Generally, as to the reasonableness of any classification, "The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat." (*Hebe Co.* v. *Shaw*, 248 U.S. 297 [39 S.Ct. 125, 63 L.Ed. 255, 259].)

■■■ That the record keeping requirements of the code are reasonably necessary to accomplish the purpose of the legislation is apparent from the allegations of the complaint. It is alleged as to appellants' re-refining oils, that there is no known test by which they can be distinguished from oils that have never been used, and that prior to the addition to the code of the record keeping requirements the respondents themselves were unable to enforce the labeling provisions. The complaint makes out a clear reason why some method had to be adopted to follow, for instance, the oils from the waste pits through the re-refining processes and back into the market again. Generally, on the validity of such requirements and as stating the rule that even if such requirements appear to be unwise or burdensome or inferior to others that might have been adopted they are still permissible see *American Tel. & Tel. Co.* v. *United States of America*, 299 U.S. 232 [57 S.Ct., 170, 81 L.Ed. 142].

Appellants allege that they are entitled to proceed for declaratory relief under the allegations of their complaint, claiming that they have stated a case of actual controversy relating to the legal rights and duties of the parties under the subject sections.

The complaint alleges that appellants, in addition to re-refined used oils, also purchase virgin stock oils, some of which they sell without further processing and some of which they re-refine, rerun, filter or redistill, sometimes also blending such virgin stock oils with other oils, including re-refined used

oils "in order to produce lubricating and motor oils of high quality." They say they cannot determine from the code sections whether a reclaimed label must be placed only on containers of used oil which has been rerun, filtered, redistilled or reclaimed or whether such label must be placed on containers of unused oil so treated. We think the statute is clear upon the matter. It is stated specifically that the reclaimed label must be placed on any oil used or unused which has been by the person proposing to sell the same rerun, filtered, redistilled or reclaimed. It may thus result that the label is placed upon virgin stock oils which have never been used, but the purpose of the legislation is plain. There is definite danger that virgin stock oils for use that have been treated by reprocessing may be mixed or blended with used oils and thus become a means of evasion and violation of the labeling law. Appellants say they do not know whether the labels must be placed on containers of unused oils which have been blended or compounded with rerun, filtered, redistilled or reclaimed oil, but the statute clearly says they must be. We think it unnecessary to further follow the complaint's allegations of uncertainty in the statutes. We have considered them all and think that the statutes are reasonably clear in all matters in which it is alleged they are uncertain. The labeling statute clearly requires that if oil has been previously used *or* has been rerun, filtered, redistilled or reclaimed the container shall bear the label. We think this legislation clear enough to meet the tests imposed by courts when a legislative act is challenged for uncertainty. A statute will not be held void for uncertainty if any reasonable and practical construction can be given to its language. The fact that its meaning is difficult to ascertain will not render a statute nugatory. (23 Cal.Jur. "Statutes," § 36, p. 640.) It is to be observed in this connection that the respondent Department of Agriculture, to which is delegated the task of enforcing the code provisions here in question, may within permissible limits implement and interpret and make specific the law administered by it. (Gov. Code, § 11371.) And the bare allegation that a statute is in some particulars vague to the point where one bound to observe it is uncertain as to just what is thereby required is not a compelling reason why a court should attempt in a declaratory action to direct in detail the manner in which and the methods by which the administrative agency shall administer the law. Appellants do not allege that the respondent department has

attempted any unlawful enforcement within the area now being discussed and indeed alleges that for many years the department made no effort to enforce the labeling provisions of the law and that appellants have consistently violated the same, all because without the record keeping provisions the department was helpless to compel the labeling provisions to be observed. The allegations of the complaint go no further in this respect than to say that the department, since the enactment of the record keeping requirement, is now threatening to compel the appellants to observe the labeling provisions. Under these circumstances it was entirely within the discretionary power of the trial court to refuse to entertain the count for declaratory relief. Section 1061 of the Code of Civil Procedure provides that, ''The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.''

 The demurrer was properly sustained without leave to amend. Basically, appellants' cause of action is grounded upon the proposition that they may attack the constitutionality of the subject sections of the code because they are engaged in the business of re-refining used oils, which business will, they say, be materially injured, if not destroyed, if they are compelled to label the products they sell as ''reclaimed.'' If the subject sections be not vulnerable to appellants' attack based upon these fundamental allegations, then we cannot see how an amendment could have served the appellants, for it cannot be supposed, and appellants do not claim, that by amendment they could or would have changed the fundamental basis of their action. Under such circumstances, the sustaining of the demurrer without leave to amend was an action within the discretion of the trial court, which may make such order when it cannot be perceived that any useful purpose would or could be served by allowing an amendment.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied June 29, 1953, and appellants' petition for a hearing by the Supreme Court was denied July 28, 1953.