## FELIX B. HIGGINS, Trustee, Etc. *v.* THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

United States Legal Tender Notes.—United States notes issued under and by authority of the Act of Congress of February 25th, 1862, entitled "An Act to authorize the issue of United States notes," etc., and the Act of March 3d, 1863, entitled "An Act to provide ways and means for the support of the Government," are lawful money and a legal tender in payment of all private debts contracted before the passage of said Acts, unless by the terms of the contract creating the debt the debtor promised to pay in gold or silver coin.

Laws making United States Notes Lawful Money. — The Acts of Congress making United States notes lawful money and a legal tender in payment of debts are not laws operating retrospectively, but *in presenti* and prospectively.

How Promise to pay Money generally, Satisfied.— A promise to pay money generally, can be satisfied by a payment in any kind of currency that becomes lawful money and a legal tender during the interval through which the relation of debtor and creditor shall be extended.

Discrimination between Kinds of Money. — Courts cannot discriminate between one kind of money and another in cases where neither the parties contracting nor the laws have made any such discrimination.

Appeal from the District Court, Fourteenth Judicial District, Placer County.

The facts are stated in the opinion of the Court.

*Charles A. Tuttle,* for Appellant.

*H. H. Haight,* also for Appellant.

The Act of Congress making Treasury notes a legal tender is not retrospective by its terms. It is not declared that the notes shall be a tender in payment of " all debts, public and private," contracted before the passage of the Act. The term " all debts, public and private," has no express reference to prior debts, and involves no idea of time, but is used as a comprehensive phrase to include all classes or kinds of debtors and creditors. It must, therefore, upon well settled principles, be considered as referring exclusively to debts contracted after its passage.

The rule of interpretation is stated by all the authors, that statutes are not to be construed retrospectively, or to have a retroactive effect, unless that intention is expressed in terms,

20

and not even then, if by such a construction the Act would divest vested rights. (Sedgwick on Stat. 184, 188,. 189, 407, etc.; Smith's Com. 679, Sec. 533, and cases cited in Notes; Bacon's Abr. Tit. Statutes, [C]; 2 Exchequer R. 22; 7 Johnson, 477, 499, etc.; 2 Modern R. 310 ;. 4 Serg. & Rawle, 401; 4 Burrow,.2,460; 3 Shepley, 134; 1 Scammon, 335; 2 Scammon, 499; 3 Call R. 278; 1 Blackstone's Com. 46; 3 Serg. & Rawle, 597, 598; 1 Kent's Com. 408, marg. 455; 3 Dallas, 390, 391; 2 Hill, N. Y. 239; 2 Paine's C. C. R. 504, 516, 517; 54 Eng. Com. L. R. 549; 3 Edward's Ch. R. 464; 12 Johnson, 174; 10 Wendell, 114; 4 Denio, 376; 2 Comst. 184; 8 Wendell, 663; 1 Cal. 65; 4 Cal. 131; *Sanford* v. *Bennett*, 24 N. Y. 20.)

There is no expression in the statute which lays the foundation for an exception to the rule, nor any consideration growing out of the subject—no motive of patriotism, justice, or public policy, favors a different rule. On the contrary, the natural repugnance of every just mind to fraud, injustice, and oppression, unite with regard for the honor of the Government, to urge adherence to a rule established in sound wisdom, sanctioned by an unbroken current of judicial decisions, and approved by the experience of all past ages.

Well known rules in the construction of statutes ought not to be departed from. (*Douglas* v. *Howland*, 24 Wend. 45–7.)

*Tweed & Craig*, for Respondent.

The rule of construction is not correctly stated by appellant, viz.: " That statutes are not to be construed retrospectively or to have a retroactive effect, unless that intention is expressed in terms, and not even then, if by such a construction the Act would divest vested rights."

Two classes of cases are cited as supporting this proposition, of which only one class is founded upon *mere rules of construction.* In the other class the decisions are founded upon the *fact* that the Legislature in passing the particular Act in question, attempted to legislate upon a subject or in a manner for-

bidden it by some superior or constitutional law, or in other words, in a manner beyond its *power*.

This class of cases has no application here, as we understand it to be admitted that Congress had ample *power* to make the Legal Tender Acts retrospective, the only question being whether it has done so.

And the other class which bears upon the question of construction does not sustain the proposition of appellant, stated broadly as it is.

The Acts in question are purely remedial. The Legal Tender Acts, both as to metallic and paper currency, create, define and prescribe the ultimate of all remedies, (excepting specific performance, ejectment, etc.,) and the process of Courts are merely auxiliary, and designed to secure this ultimate. The substances declared to be a legal tender, and thus the ultimate remedy, are so only by virtue of the law, and not on account of their intrinsic value; no matter what the influence of their intrinsic value in determining their selection.

The only office of the Treasury Note Acts is to add another substance to this ultimate legal remedy. They are not objectionable as even slightly impairing any vested rights of appellant.

*J. McM. Shafter*, also for Respondent.

*Pong* v. *John de Lindsay et als.* 1 Dyer, 822, and note, is an old case to show that the debasement of the currency is at the loss of the creditor.

In case of a contract made in one country, to be executed in another, as to interest, mode of execution, breach, form of action, rules of evidence and defense, the law of the place of execution, that being the forum, governs.

This is because the parties are presumed to submit their contract to the solution of the foreign law.

Why should not the parties be presumed to have made their contract in this case with the intention of submitting its construction to the law of the *time* of its execution. The analogy is certainly entitled to some weight.

That Congress must have meant all *existing* debts as well as all subsequently accruing, is involved in the simple expression they use—" debts."

The language is the same as that in the Bankrupt Act of 1841.   U. S. S. at Large, Vol. 2, p. 19, and *post*, Secs. 1, 2, 6, use the words " debt" and " debtor," " due and owing." Section thirty-four provides that the bankrupt shall be discharged from " all debts."

All the decisions under this Act interpret this language as covering past debts.   Why should not the same term have the same resolution in the statutes creating legal tenders?

Chap. 52, 5 U. S. S. at Large, p. 9, provides that no bank bills less than twenty dollars shall be paid on account of pensions.   So undoubted was the power of Congress to make such bills legal tenders that a proviso forbids anything but gold or silver being a legal tender.   This provision as to the size of the bills was changed.   (Chap. 8, p. 440.)

The distinction in the descriptive phrases and the legal uses of " legal tenders" and notes issued by the national banks, is important.   (12 Statutes at Large, p. 670, Sec. 20.)   Bank paper may be issued and circulated *as money*, and shall be received at par, and with certain exceptions shall be received and paid out by the United States upon all debts and demands.

But this kind of money is not made a tender for private debts, nor does the Government retain the right " in terms" to tender it.

It is deemed unnecessary to collate the language or sections, further than to say the legal tender statutes speak of the debt as a fact existing at the time of their passage ; of the relation of debtor, and the obligation involved in the terms "due" and "owing" as one " past and existing," and having no relation to the future but the simple one as to the manner of its discharge.

By the Court, Currey, J.

In the years 1858 and 1859, the Bear River and Auburn Water and Mining Company—a corporation—became indebted to the plaintiff as trustee for certain owners and holders of bonds issued by the company, amounting, in the aggregate, to the sum of thirty thousand dollars. These bonds were made and issued by the company at different times during the years mentioned. Each of the bonds was in the sum of five hundred dollars. These bonds were drawn and made payable as follows: One third in twelve months, one third in eighteen months, and one third in twenty-four months from the time they were issued, with interest thereon at the rate of two and a half per cent per month, payable quarterly. The debts thus created were secured by a deed of mortgage, executed and delivered on behalf of the corporation to the plaintiff, in trust for the owners and holders of the bonds. The mortgage was duly recorded.

The plaintiff commenced an action in December, 1861, in the District Court of the Eleventh Judicial District, in and for Placer County, to recover judgment for the amount due on the bonds, and to obtain a decree for the foreclosure of the mortgage and for the sale of the mortgaged property, and, in April following, the Court made a decree and judgment in the cause, by which it was ascertained and determined that there was due from the defendant to the plaintiff, as trustee, on the bonds set forth in the complaint, the sum of twenty-eight thousand two hundred and seventy-seven dollars and thirty-five cents, and adjudged that the amount due should bear interest at the rate of two and a half per cent per month from the date of the judgment; and also decreed a foreclosure of the mortgage, and that the mortgaged property be sold according to the practice of the Court in such cases, for the payment of the sum due and the interest to accrue thereon. In April, 1864, the plaintiff caused process—an order of sale of the mortgaged property—to be issued, and placed in the hands of the Sheriff to enforce payment of the amount then

due on the judgment. After the order of sale had come to the hands of the Sheriff, the defendants tendered to him the amount due on the judgment, and also the interest due thereon, and all costs that had accrued. The kind of money tendered was United States notes, issued under and by authority of the Act of the Congress of the United States, passed on the 25th day of February, 1862, entitled "An Act to authorize the issue of United States notes, and for the redemption or funding thereof, and for funding the floating debt of the United States;" and the Act passed on the 3d day of March, 1863, entitled "An Act to provide ways and means for the support of the Government." The Sheriff refused to receive the money tendered, whereupon the defendant paid it into Court for the plaintiff, and then moved the Court that the judgment be declared satisfied, and that the Sheriff be required to return the order of sale then in his hands. The Court thereupon made an order, reciting the facts and directing satisfaction to be entered of judgment and decree, and that the Sheriff return the order of sale. Upon this the Sheriff made his return, as directed, and the same was filed in the office of the Clerk of the Court, and satisfaction of the judgment and decree was entered of record. From the order so made the plaintiff has appealed.

The question to be determined is whether or not United States notes issued under and by authority of the Acts of Congress mentioned, were at the time the tender and payment into Court were made, a legal tender in the payment of debts which were created and became due before the passage of those Acts, when the written instrument, which is the evidence of the indebtedness, does not provide in what kind of money the debt shall be paid, otherwise than in dollars generally.

The plaintiff does not question the validity of the Acts of Congress making United States notes lawful money and a legal tender in the payment of debts, but he maintains that this kind of money, by a fair construction of the Acts of Congress, has never constituted a legal tender in the payment of debts contracted before the passage of the Act of the 25th of Feb-

ruary, 1862, and in support of this position is invoked the general doctrine that a statute ought not to be so construed as to give it a retrospective operation so as to affect contracts entered into previous to its enactment, if it will bear any other interpretation. That such is the doctrine of the law, having for its basis principles and reasons which cannot be set aside without at the same time holding that the obligation of contracts may be impaired and even destroyed, is not to be denied.

A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, is to be deemed retrospective. (2 Gallison, 105, 139 ; Sedgwick on Stat. and Const. Law, 188 ; Smith's Com. on Stat. and Const. Law, Sec. 149.) It is a rule never to apply a statute retrospectively by mere construction. (*Jarvis* v. *Jarvis,* 3 Ed. Ch. R. 464.) It was held by Mr. Justice Spencer in *Dash* v. *Van Kleck,* 7 John. 447, that all laws are to be construed according to the intention of the Legislature, and in getting at that intention Courts must presume a prospective and not a retrospective operation was meant unless such presumption is repelled by express words ; and in *Harkley* v. *Sprague,* 10 Wend. 113, Mr. Chief Justice Savage said all statutes are to be construed prospectively and not retrospectively unless they are otherwise incapable of a reasonable construction. (*Jackson* v. *Van Zandt,* 12 John. 174 ; *Palmer* v. *Conley,* 4 Den. 376, and 2 Com. 184 ; *Sayre* v. *Wisner,* 8 Wend. 663 ; *Johnson* v. *Burrell,* 2 Hill, 239 ; *Berley* v. *Rampacher,* 5 Duer, 183 ; *Wood* v. *Oakley,* 11 Page, 403 ; *Sandford* v. *Bennett,* 24 N. Y. 20 ; *Taylor* v. *Terrett,* 9 Cranch. 43 ; *Thompson* v. *Lack,* 54 E. C. L. 540.) The rule of construction stated, and which is sustained by an unbroken current of decisions, is one that should be adhered to with undeviating exactness.

The Acts of Congress under consideration making United States notes lawful money and a legal tender in the payment of debts are not laws operating retrospectively but *in presenti* and prospectively. No new obligations are created nor new

duties imposed by them; neither do they attach new disabili-
ties in respect to transactions or considerations which had
transpired before their passage.  They simply provide that
the notes issued by their authority shall be lawful money, and
that such money shall be a legal tender in the payment of
debts.  What debts?  The answer is, all debts public and pri-
vate within the United States, except duties on imports and
interest on the bonds and notes of the United States.  The
Acts of Congress, so far as they declare that treasury notes
shall be a legal tender in the payment of debts, make no refer-
ence to the time when the obligation had its inception.  They
operate directly upon subsisting debts, recognizing the exist-
ing relations of debtors and creditors, and declare that a cer-
tain kind of money, which is made lawful money by the sov-
ereign authority, shall be a legal tender as well as other kinds
of money, in the payment of debts then due, or to become due
thereafter while such money may be a lawful currency and a
legal tender in the payment of debts.  Do they impair the
obligations of contracts made or rights acquired and vested
under previously existing laws?  If such was their effect we
are free to say we should not regard ourselves obliged to lead
in upholding them.  But is such their effect?  To answer this
inquiry it is only necessary to refer to the contract in question,
made long before the passage of these Acts of Congress, and
to understand its import.  It is simply an agreement to pay
certain sums of money at an appointed time.  This was not
a contract to pay any particular kind of money other than such
as might be a legal tender in the payment of debts at the time
thereafter when the debt created should be due and unpaid.
Such was the promise or undertaking of the defendant in the
case before us, and nothing beyond this; and such being the
contract, was it not competent for the defendant to perform it
by a literal compliance with its terms?  The defendant's prom-
ise, which the plaintiff accepted, we repeat, was not to pay
in any particular kind of money, but in effect to pay a certain
number of dollars in any kind of currency that should be or
become lawful money and legal tender during the interval

through which the relation of debtor and creditor should be extended; and when the debtor tendered and paid into Court the amount due, in money which, by the law of the land, was a legal tender in the payment of debts, all that the creditor could exact and enforce under the contract was performed. We cannot say any contract obligation was violated by holding that the payment tendered and made was valid and effective, without first deciding that United States treasury notes are not what the Act of Congress declares them to be. In *Lick* v. *Faulkner*, 25 Cal. 404, and other cases, we held the Acts of Congress making United States notes lawful money and a legal tender in the payment of debts, to be constitutionally valid and binding. If such notes are money in the sense declared in *Lick* v. *Faulkner*, the judicial department of the country cannot say a dollar of such currency is worth more or less than a dollar of any other kind of money. Were we to undertake to discriminate between one kind of lawful money and another, in cases where neither the parties contracting nor the laws of the country have made any distinction between them, we should be involved in an inextricable absurdity, besides which our judgment would not be an exposition of the laws as we find them, but would be an exercise of legislative power abrogating the Acts of Congress.

When the tender was made, United States notes were a legal currency, and the obligation of the defendant, by the terms of his contract, was to pay a certain number of dollars generally. In *United States* v. *Robertson*, 5 Peters, 660, Mr. Chief Justice Marshall said that an obligation to pay money in general terms may be discharged by payment in legal currency; and in *Faw* v. *Marsteller*, 2 Cranch. 26, the same Judge in a case analagous to the one before us, in answer to a position assumed and maintained by counsel in that case, said : " The position that the value of money at the time of the consideration for which it was to be paid was received, is the standard by which the contract is to be measured, is not the correct one." In the case of *Metropolitan Bank* v. *Van Dike*, decided by the New York Court of Appeals in 1863, (27 N. Y. 401,) the identical

question involved in this case was very elaborately and ably discussed at the bar and considered by the Court, and it was held that United States notes issued under the Act of the 25th of February, 1862, were a valid tender in payment of a debt contracted and due long before the passage of the Act.

If it were admissible in judicial proceedings to open the door to evidence to show, for instance, that at a particular date a hundred dollars in United States notes were worth only forty dollars in gold coin, not only would the laws of Congress making these notes lawful money and a legal tender be annulled and held for naught, but consequences of a most preposterous and disastrous character would be likely to follow. In after years, when the notes issued under these Acts of Congress may become absorbed, and gold and silver coins shall be the only lawful money in the land, the inquiry would be, what was the difference in the value between the two kinds of money when the contract was made? Then, if it should appear that at the date of the contract, a hundred dollars in United States notes was worth only forty dollars in gold coin, the creditor would be entitled to recover only forty dollars, though his debtor's promise was to pay him one hundred dollars. It is needless to add illustrations of the confusions and mischiefs that would result were the Courts to hold that one kind of money is worth more or less than another kind, notwithstanding by sovereign behest there is no difference between them. The laws of Congress place the two kinds of money on an equality, so far as the case at bar is concerned, and therefore it results from existing conditions that the money tendered and paid into Court was as effectual to the discharge of the defendant's obligation as the same amount of United States gold coin would have been had the payment been tendered in that kind of money.

The conclusion to which we are forced by the conditions of the subject matter involved is, that the tender of United States notes constituted a legal tender for the payment of the amount

due, and therefore the order made by the Court was correct and should be affirmed.

Order affirmed.