[No. 20330. In Bank. — November 3, 1887.]

Ex parte HENRY KOHLER, on Habeas Corpus.

Pure-wine Act — Subject Expressed in Title — Constitutional Law. — The act of March 7, 1887, entitled "An act to prohibit the sophistication and adulteration of wine, and to prevent fraud in the manufacture and sale thereof," does not conflict with the requirements of section 24 of article 4 of the constitution, which provides that "every act shall embrace but one subject, which subject shall be expressed in its title."

Id. — Due Process of Law. — Such act is not unconstitutional because so unreasonable in its restrictions upon the sale of wines as to deprive persons of their property or liberty without due process of law.

Id. — Pure California Wine — Stamp not Required on. — The provision of section 8 of that act, — to the effect that "it is desired and required

that every grower, manufacturer, trader, handler, or bottler of Califor-
nia wine . . . . shall plainly stencil, brand, or have printed, where it
will be easily seen, first, 'Pure California Wine,' and secondly, his name
or the firm's name,"— is not mandatory, so as to require a pure-wine
stamp to be placed upon pure California wine; nor does a failure to
place such stamp upon pure California wine constitute any violation of
the act.

APPLICATION for a writ of *habeas corpus.*    The facts are
stated in the opinion of the court.

*Morrow & Stratton,* for Petitioner.

*J. P. Langhorne, M. M. Estee, amicus curiæ,* and *John
T. Doyle, amicus curiæ,* for Respondent.

PATERSON, J.—The petitioner was convicted in the
police court of the city and county of San Francisco of
the crime of misdemeanor, committed in violation of
the provisions of ·an act of the legislature of the state
of California, entitled "An act to prohibit the sophisti-
cation and adulteration of wine, and to prevent fraud
in the manufacture and sale thereof," approved March
7, 1887.    (Stats. 1887, p. 46.)

The salient provisions of the act are as follows:—

Section 1 defines pure wine for the purposes of the
act.    Section 2 prohibits the using of deleterious substi-
tutes in the fermentation, preservation, and fortification
of pure wines.    Section 3 prohibits the use of materials
injurious to consumers for the promotion of fermenta-
tion.    Section 4 declares it to be unlawful to sell, under
the name of wine, any substance other than pure wine,
as defined by the act.    Section 5 makes an exception in
the case of pure champagne and sparkling wine, so as
to permit the use of sugar in sweetening the same.    Sec-
tion 7 provides for the printing and furnishing of labels
by the controller of the state, setting forth that the wine
covered by such labels is pure California wine.    Section
8 reads as follows:—

"Sec. 8.    It is desired and required that all and every

grower, manufacturer, trader, handler, or bottler of California wine, when selling or putting up for sale any California wine, or when shipping California wine to parties to whom sold, shall plainly stencil, brand, or have printed, where it will be easily seen, first, ' Pure California Wine,' and secondly, his name or the firm's name, as the case may be, both on label of bottle or package in which wine is sold and sent; or he may, in lieu thereof, if he so prefers and elects, affix the label which has been provided for in section 7. It shall be unlawful to affix any such stamp or label as above provided to any vessel containing any substance other than pure wine, as herein defined, or to prepare or use on any vessel containing any liquid, any imitation or counterfeit of such stamp, or any paper in the similitude or resemblance thereof, or any paper of such form and appearance as to be calculated to mislead or deceive any unwary person or cause him to suppose the contents of such vessel to be pure wine. It shall be unlawful for any person or persons other than the ones for whom such stamps were procured to in any way use such stamps or to have possession of the same. A violation of any of the provisions of this section shall be a misdemeanor, and punishable by a fine of not less than fifty dollars," etc.

The complaint charged "that said Henry Kohler, being a dealer and bottler of California wines, did sell to the prosecuting witness, one Jaspar, a bottle of California wine, which bottle, when so sold, did not have plainly, or at all, stamped thereon the words ' Pure California Wine,' nor did it have, in lieu thereof, the stamp as furnished by the controller of state."

Several questions are presented involving the construction of the act referred to, and its constitutionality. It is claimed by petitioner that the act is not mandatory in requiring a pure-wine stamp to be placed upon pure California wine. The complaint did not charge

petitioner with the sale of sophisticated or adulterated wine; it accused him merely of selling a bottle of California wine without having thereon the pure-wine stamp. It is claimed by counsel for the people that, under the act referred to, dealers in wine are prohibited from selling *pure wine* without the stamp designated by the act. Petitioner contends that while the pure-wine stamp *may be* used, there is no penalty prescribed for a failure to use it.

The act is not objectionable upon the ground claimed by the petitioner, that it embraces more than one subject, contrary to the requirements of article 4, section 24, of the constitution, which provides that "every act shall embrace but one subject, which subject shall be expressed ·in its title." However numerous the provisions of an act may be, if they can be fairly considered as falling within the subject-matter of legislation, or as proper methods for the attainment of the end sought by the act, there is no conflict with the constitutional provision above quoted. In any event, it is only where there is a clear violation of the constitution that the court is justified in declaring it unconstitutional. The great object to be attained by the "Act to prohibit the sophistication and adulteration of wine, and to prevent fraud in the manufacture and sale thereof," must have been to secure the manufacture and sale of none but pure California wine. The first section defines pure wine; the second section prohibits the use of deleterious substitutes; the fourth section prohibits the sale of any but pure wine, and every penalty affixed is for the purpose of protecting those who make and sell pure wine, and for punishing those who make and sell impure wine. Manifestly, the provisions of the act all fall within the subject named in its title, and are necessary and logical methods for the attainment of the end desired by the legislature. The act, therefore, is not repugnant to article 4, section 24, *supra.*

Now, is the act unconstitutional because so unreason-

able in its restriction upon the sale of wines as to deprive the petitioner of his property and liberty without due process of law? The power of the legislature to impose such regulations for the conservation of the health of its citizens has been so often discussed and affirmed here that it is useless to reopen the question. The manufacture and sale of liquors of all kinds, the sale of pure milk, the inspection and sale of meats, and the control of laundries and slaughter-houses are all subject to regulation. Whatever construction may be placed upon the act, it is difficult to see how a compliance with the law would injure an honest dealer in California wine.

A more difficult question is that which refers to the proper construction of section 8. Is it mandatory in requiring a pure-wine stamp to be placed upon *pure* California wine? Is a failure to place such stamp upon *pure* California wine " a violation of anv of the provisions of this section " ?

All legislation directed against the adulteration and simulation of articles of food and drink is aimed at a common object, — the preservation of the public health. The court will take judicial notice of the evils preceding such legislation, and the mischiefs intended to be prevented thereby, the character and importance of the interests of the state which may be affected thereby, and the usual course of business. A knowledge of these matters is often necessary to a full and fair understanding of the force and effect of the law, and is a valuable help in ascertaining its true intent and meaning. The growth of the wine-growing interests of this state is a matter of world-wide publicity. It is a well known fact that California is the only state in the Union where the grape suitable for wine-making is cultivated in vineyards, and that her wines are rapidly growing in favor and rivaling in quality the table wines of foreign countries. With the progress and success of this industry

there has grown up and increased the manufacture and sale of spurious wines, which are not only injurious to health, but detrimental to the wine industry. Several attempts have been made in Congress to prevent the trade in this cheap and unwholesome stuff, but without material effect. Finally, in 1886–87, when the evil had attained so great a magnitude as to attract public attention, the Grape-growers' and Wine-makers' Association of California presented a bill to the legislature of this state, which, after being amended, was passed, containing the provisions above stated. The primary objects of the act were doubtless to prevent the sale of spurious wine under the designation of "California wine," and to promote the public health. But there were other objects to be attained incidentally. The wine-grower who produced good wine would not have to suffer the effect of a blending by the trade of his article of superior merit with an inferior one. It was evidently through the efforts of wine-growers, who aimed at a high degree of excellence in wine-making, that the first clause of section 8 was inserted. Some expression on the part of the legislature of the state was desired as authority for affixing a badge to their productions, by which the consumer could feel sure of the purity of the wine and the identity of the producer. That the words "desired and required" were intended to express rather a legislative wish and permission than a mandate, is indicated, too, in the discordancy of the natural meanings of the words themselves. As words of legislative command, they are singularly inappropriate and inconsistent. It is difficult to understand how it can be made a penal offense to violate simply a legislative *desire*. The word "desired" cannot be ignored the construction of the act any more that the wo quired," and the former is at least as forcibl pression of a request as the latter is in it a command.

The act in all other provisions containing mandates and prohibitions is positive and forcible in its language. Thus it is noticeable that the same section farther along provides: "It shall be unlawful to affix any such stamp," etc.; and again: "It shall be unlawful for any person or persons other than the ones for whom such stamps were procured to use," etc. Other sections of the act use the same language, — words which are ordinarily employed in expressing the mandates and prohibitions of penal statutes. We do not think it was intended that the sales of wines admitted to be pure should be circumscribed, limited, or restricted. Such legislation is unusual. We know of no similar statute where anything more has been attempted than, first, to prohibit the adulteration and sophistication of food and drink, and second, if permitted, to compel the appropriate stamping and designation of such food and drink. The New York pure-wine law, approved in June, 1887, defines pure wines, half wines, and made wines; prohibits the sale of adulterated wines, and requires the stamping of half wines and made wines; but it does not in any manner attempt to regulate the sale of pure wines. If the legislature had intended to compel the use of stamps and labels on pure wine, it could easily have stated that the failure, neglect, or refusal so to use them, was unlawful, and there would have been no ambiguity in its language. The fact that it is carefully stated in the act what shall be unlawful in other respects is strong evidence that the first clause of section 8 was not intended to be obligatory. It is always to be presumed that the legislature will express its intention in clear and explicit terms in prescribing the obligations for a violation of which a penalty is affixed. In ___ of this kind, the limitations and restrictions should ___ and free from doubt. (*Hill* v. *Decatur,* 22 Ga. ___ a general rule that statutes affixing penalties ___tly construed, and all doubts resolved in ___sed. (*People* v. *Tisdale,* 57 Cal. 107.)

When measured by the mischief contemplated by the legislature, an additional reason is presented for giving to section 8 a permissive scope, rather than a mandatory one, so far as the stamping of pure wines is concerned. The act defines pure wine, prohibits adulteration and deterioration, prohibits the sale of impure wine; the controller is authorized to furnish labels, and penalties are provided for the use thereof on other than pure wines. This seems to be the natural scope of the act, and all that is necessarily indicated in its title. There can be no fraud in the sale of pure wine. The title is a part of the act, and must declare its object; and in all cases where the legislative intent is ambiguous, judicial reference may be had to the title of the act to assist in determining its meaning. (*Weed* v. *Maynard*, 52 Cal. 459; *Barnes* v. *Jones*, 51 Cal. 303.) We think, therefore, that the affixing of labels on pure wine is not obligatory, and that the proper construction of section 8, wherein it declares that a violation of any of its provisions is a misdemeanor, is to impose a penalty for a violation of only those provisions which are therein specifically declared to be unlawful. It results that the complaint states no offense, and the petitioner must be discharged.

So ordered.

Temple, J., Sharpstein, J., McKinstry, J., and McFarland, J., concurred.