[Civ. No. 7148. Third Dist. May 1, 1945.]

RICHARD H. ROSENBLATT, Petitioner, v. CALIFORNIA
STATE BOARD OF PHARMACY, Respondent.

Ernest C. Crowley for Petitioner.

Robert W. Kenny, Attorney General, and Carl W. Wynkoop, Deputy Attorney General, for Respondent.

PEEK, J.—Petitioner herein seeks to compel the respondent State Board of Pharmacy to issue to him a renewal of his license as an assistant pharmacist.

By his petition it is alleged he was a duly licensed assistant pharmacist under the laws of this state and in accordance with the provisions of an act entitled "An Act to Regulate the Practice of Pharmacy." (Stats. 1905, chap. cdvi, p. 535.) This act was amended from time to time, and in 1937 sections 4160 to 4162 were added to the Business and Professions Code as a part of the codification thereof, and which read:

"4160. Registered assistant pharmacists are persons who were registered as such under chapter 406 of the Statutes of 1905, relating to pharmacy, and who have paid all moneys due for renewal of registration as required by that statute, and are such other persons as are registered in accordance with the provisions of this article.

"4161. The board shall register as an assistant pharmacist any person who is in any one of the classes provided in this article.

"4162. Registration as an assistant pharmacist, Class A, shall be granted to any person at least 20 years of age, who:

"(a) Has passed a written examination to the satisfaction of the board.

"(b) Has had three years of pharmaceutical experience.

"(c) Has satisfactorily completed at least one-half of the course required for graduation in a school or college of pharmacy or a department of pharmacy of a university recognized by the board."

Section 4135 of said code provided in part:

"Registration as a licentiate in pharmacy, class four, shall be granted to any person at least 21 years of age, who: . . .

"(d) Has been registered as an assistant pharmacist for a period of two years prior to his application for examination as a licentiate in pharmacy."

By the Statutes of 1943, chapter 510, page 2052, subsection (d) of said section was amended to read as follows:

"Registration as a licentiate in pharmacy, class four, shall be granted to any person at least 21 years of age, who has been registered as an assistant pharmacist in this State prior to September 1, 1943, and who has been actively engaged in the practice of pharmacy for the five years immediately preceding."

At the same session, the Legislature repealed said chapter 9, article 7, sections 4160 to 4162 inclusive, relating to assistant pharmacists. (Stat. 1943, chap. 508, p. 2050; chap. 510, p. 2052.)

The stipulated statement of facts on file shows that petitioner was duly licensed as an assistant pharmacist on January 14, 1939, under the provisions of sections 4160 to 4162 inclusive, of chapter 9, article 7 of the Business and Professions Code, and that his license was renewed yearly.

On June 9, 1944, approximately nine months after the amendments to section 4135 and the repeal of sections 4160 to 4162 became effective, he transmitted his renewal fee to the Board of Pharmacy, and some time thereafter received a communication from the assistant director of the Department of Professional and Vocational Standards, informing him in part that ". . . Since the registration of assistant Pharmacists was abolished by law, effective September 1, 1943" the fee was refunded and the renewal license denied.

Two contentions are made by petitioner, first, that as the legislation attacked is retrospective and an attempt to deprive him of his previously acquired status as an assistant pharmacist, it is void, and second, that a license is issued to one who meets the requirements of the statute, and thereafter it is used by him as a means of gaining his livelihood, said

license therefore becomes a vested right, and any attempted deprivation thereof is unconstitutional.

■ We find no merit in petitioner's first contention. The mere fact that a statute is deemed to be retrospective or retroactive legislation is not fatal to the act. Neither the federal Constitution nor that of the State of California prohibit the enactment of such laws. (5 Cal.Jur. 747.) However, such a law may "be invalid if it deprives one of vested rights which are bound to be respected or protected by the state, or if it impairs the obligations of a contract." (*American States W. S. Co.* v. *Johnson*, 31 Cal.App.2d 606, 613 [88 P.2d 770].)

This brings us, then, to a consideration of the second issue raised by petitioner. At the time of the oral argument it was agreed by counsel that such contention was the sole question for determination by this court, counsel for respondent stating that if it be determined that the petitioner had acquired a vested right by virtue of the license issued to him in 1939 the writ should issue.

Because in one sense every right is vested (*Stohr* v. *San Francisco Musical Fund Society*, 82 Cal. 577 [22 P. 1125]), the term "vested right" has had prolific use and discussion. But although it has been used frequently, too often it has been used loosely, both in this state and elsewhere.

Therefore it becomes necessary at the outset of a consideration of the problem herein presented to distinguish between a right which arises as the result of a contractual obligation and a right acquired by a license granted under the inherent police power of the state.

It is conceded that every citizen has a right to follow any lawful business or profession which is not injurious to the public or a menace to the health, safety or welfare of society, free from regulation by the exercise of the police power of the state except in cases of necessity for such health, safety or welfare, and when its authority is so interposed in behalf of the public it must be by means reasonably necessary for the accomplishment of that purpose.

■ A determination of what is reasonably necessary for the public health, safety or welfare is a legislative function and should not be interfered with, only in case of clear abuse. Where a statute is clearly such a measure, the fact that rights may be affected does not invalidate the act.

■ The power of a state to so provide for the general welfare of its citizens authorizes it to prescribe all reasonable

regulations as in its judgment will secure or tend to secure them against the consequences of ignorance or incapacity in the pursuit of various professions or callings. (*Dent* v. *West Virginia*, 129 U.S. 114 [9 S.Ct. 231, 32 L.Ed. 623].) Illustrative of, and as a means to this end, our Legislature has seen fit to demand and exact a certain degree of learning and skill in some score or more businesses and professions, by the enactment of regulatory statutes and the creation of agencies to administer such acts. (See, generally, Business and Professions Code.)

A license obtained by compliance with the statutes relating to any one of the many businesses and professions set forth in said code may become of great value to the possessor and cannot be arbitrarily taken from him any more than his real or personal property can thus be taken. "But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society." (*Dent* v. *West Virginia, supra.*) To this might well be added: or inability to comply with such conditions.

Clearly, the present act was to protect the health and safety of the people of this state from dangerous, and also what might be the fatal, effects of medicines and prescriptions improperly prepared through the inadequate learning and skill of assistant pharmacists. The Supreme Court stated in an early case that judicial notice could be taken of the evils demanding legislation, the mischief intended to be remedied and the importance of public interests thereby. (*Ex parte Kohler,* 74 Cal. 38 [15 P. 436]; 50 Am.Jur. § 291.)

If, then, the Legislature had the right under the police power of the state to impose restrictions upon assistant pharmacists to practice in the first instance, and it cannot be denied that such a subject is a proper one for legislative regulation (*Reetz* v. *Michigan,* 188 U.S. 505 [230 S.Ct. 390, 47 L.Ed. 563]; *Gray* v. *Connecticut,* 159 U.S. 74 [15 S.Ct. 985, 40 L.Ed. 80]; *Dent* v. *West Virginia, supra; State* v. *Hovorka,* 100 Minn. 249 [110 N.W. 870, 10 Ann.Cas. 398, 8 L.R.A.N.S. 1272]), it necessarily must follow that the correlative right to impose further restrictions for the same purpose is a necessary consequence of the initial power.

The general rule, established by the great weight of authority, appears to be that a license from the state issued

in the exercise of its police power permitting the doing of that which without the license would be unlawful, is not a contract and does not convey a vested right. (*In re Carlson*, 87 Cal. App. 584 [262 P. 792]; *State* v. *Hovorka*, 100 Minn. 249 [110 N.W. 870, 10 Ann.Cas. 398, 8 L.R.A.N.S. 1272]; *Reetz* v. *Michigan, supra; Hawker* v. *New York*, 170 U.S. 189 [18 S.Ct. 573, 42 L.Ed. 1002]; *State ex rel. Burroughs* v. *Webster*, 150 Ind. 607 [50 N.E. 750, 41 L.R.A. 212]; *State* v. *Gazlay*, 5 Ohio 14, 15; *Simmons* v. *State*, 12 Mo. 268 [49 Am.Dec. 131].)

A license has none of the elements of a contract and does not confer an absolute right but a personal privilege to be exercised under existing restrictions and such as may thereafter be reasonably imposed.

In accordance with such general rule this court stated in the case of *Gregory* v. *Hecke*, 73 Cal.App. 268 [238 P. 787]:

"No person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to legislative control under the police powers." (Citing *Hurtado* v. *California*, 110 U.S. 516 [4 S.Ct. 111, 28 L.Ed. 232]. See 12 Am.Jur. § 694, p. 371; 16 C.J.S. § 224, p. 647.) Again, in the case of *People* v. *McCloskey*, 76 Cal.App. 227, 230 [244 P. 930], we stated:

"No one can acquire a vested right to continue in possession of that which is a menace to the public safety." In both cases petitions to have the respective causes heard in the Supreme Court were denied.

It is readily apparent if such was not held to be the rule, the right of a Legislature to enact statutes for the public welfare would be meaningless. Surely that was never the contemplation of the framers of our laws or of the courts in their interpretation thereof.

In summary and in accordance with the rule herein enunciated it may be said the granting of a license to engage in a particular calling subject to the police power of the state to regulate the same, is merely the means taken by the state in the exercise of that power to regulate and restrict the pursuit of said calling for the public good, and of itself confers upon the licensee neither contractual nor vested rights with the state upon the license so issued. The license received by petitioner as an assistant pharmacist was not for the benefit of himself but for the protection of the public, and was so accepted by him subject at all times to the paramount right

of the state at any time that the public good demanded, to further restrict his activities thereunder. If such restrictions and regulations were reasonably adopted for those purposes, they will be upheld even though they actually may prohibit him from further engaging in an occupation or profession under a license previously granted.

The writ is denied.

Thompson, J., concurred.

ADAMS, P. J.—I dissent. Petitioner was duly registered as an assistant pharmacist on January 14, 1939, presumably after meeting the requirements of the applicable statutes, to wit, sections 4160-4162 of the Business and Professions Code which had been in effect since 1901. (See Stats. 1901, p. 299.) Those sections required that in order to secure registration as an assistant pharmacist an applicant must have had three years of pharmaceutical experience, completed at least one-half of the course required for graduation in a school or college of pharmacy or a department of pharmacy of a university recognized by the State Board of Pharmacy, and passed an examination to the satisfaction of that board.

Section 4250 of that code required, and still requires, that every person holding a certificate shall renew his registration with the board annually. Petitioner requested renewal of his registration as an assistant pharmacist for the year ending June 30, 1945, but his request was denied by the assistant director of respondent board, on the ground that the registration of assistant pharmacists had been abolished by law. It is assumed that this conclusion was based upon the fact that in 1943 the Legislature repealed sections 4160 to 4162, inclusive, of the Business and Professions Code. But it is the contention of petitioner that when he acquired the status of a registered assistant pharmacist by compliance with effective statutes he became vested with a valuable property right of which he may not be deprived by the repeal of the statutes under which he acquired such right.

The first question then is did petitioner, by his compliance with the statutes in effect at the time he secured his right to practice as an assistant pharmacist, acquire a vested right. In *Miller* v. *McKenna*, 23 Cal.2d 774, 783 [147 P.2d 531], it

was said that "a vested right, as that term is used in relation to constitutional guaranties, implies an interest which it is proper for the state to recognize and protect, and of which the individual may not be deprived arbitrarily without injustice." (Also see *City of Los Angeles* v. *Oliver*, 102 Cal.App. 299, 310 [283 P. 298].)

In *Laisne* v. *California State Board of Optometry*, 19 Cal. 2d 831, 835 [123 P.2d 457], the Supreme Court definitely stated that "The appellant's right to practice optometry was a vested property right," citing *Hewitt* v. *State Board of Medical Examiners*, 148 Cal. 590 [84 P. 39, 113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A.N.S. 896]; *Suckow* v. *Alderson*, 182 Cal. 247 [187 P. 965]. In the Hewitt case, *supra*, it was said, p. 592, that "The right to practice medicine is, like the right to practice any other profession, a valuable property right, in which, under the Constitution and laws of the state, one is entitled to be protected and secured"; and this language is quoted in *Suckow* v. *Alderson, supra*. In *Cavassa* v. *Off*, 206 Cal. 307 [274 P. 523], where it was sought to revoke the license of a registered pharmacist, the court said, page 314: "The right of a person to practice the profession for which he has prepared himself is property of the very highest character." It also said, p. 315:

"Due to the severe and exacting tests, now generally required before a person can legally follow a profession at the present day, this right can only be acquired after years of arduous effort and closest application. It is generally the only means of the holder thereof whereby he may support himself and family and it usually affords such holder the best opportunity to become a useful and sustaining member of the community in which he resides. This right should not be taken from one who has thus acquired it, except upon clear proof that he has forfeited the same, and then only in strict conformity to the statute authorizing its forfeiture."

In *Klein* v. *Board of Education*, 1 Cal.2d 706, 708 [37 P.2d 74], it was held that petitioner's tenure as a vice-principal teacher was not affected by repeal of section 1793 of the Political Code in effect when she was elected a vice-principal and for a period of some ten years while she served as such vice-principal. The court said, page 708: "Of course, any tenure previously acquired by respondent was a vested right and remained unaffected by such repeal," citing *Gastineau* v. *Meyer*,

131 Cal.App. 611 [22 P.2d 31], decided by this court, where, at page 616, permanent tenure acquired by a teacher was held to be a vested right of which the school board could not deprive him.

In view of the foregoing decisions it seems to me that if the rights of physicians, optometrists and pharmacists to practice their respective professions, and the rights of teachers in tenure once acquired, are valuable property rights which, when acquired, become vested, the conclusion is inevitable that assistant pharmacists who have complied with the statutes creating assistant pharmacists and have been registered as such, have, likewise, acquired valuable vested property rights which, in the language in *Miller* v. *McKenna, supra,* "it is proper for the state to recognize and protect and of which the individual may not be deprived arbitrarily without injustice."

Assuming, then, that petitioner had acquired vested property rights prior to the repeal of sections 4160-4162, *supra,* the next question is whether the repealing statute properly may be given retroactive application, so as to deprive him of same.

In *Higgins* v. *Bear River etc. Mining Co.,* 27 Cal. 153, 159, the court said that a "statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, is to be deemed retrospective"; and that it "is a rule never to apply a statute retrospectively by mere construction."

In *Estate of Taitmeyer,* 60 Cal.App.2d 699, 709 [141 P.2d 504], the opinion states that while neither the federal Constitution nor the Constitution of California prohibits the enactment of retrospective laws, a retrospective act may not be given effect to deprive one of a completely vested property right, citing 5 California Jurisprudence, pages 728-729, and pages 751-752. The latter authority states at page 751 that "The power of the legislature to impair such vested rights as are protected by constitutional guaranties has been repeatedly denied by the courts. The right of acquiring and possessing property, as has been already mentioned, is one of the inalienable rights of each citizen, which has been guaranteed to him by the Constitution."

In *American States W. S. Co.* v. *Johnson,* 31 Cal.App.2d 606, 613 [88 P.2d 770], this court, also, said that while our Constitution does not prohibit the enactment of retrospective statutes, a statute may be invalid if it deprives one of vested rights which are bound to be respected or protected by the state; also that statutes will be construed to operate prospectively rather than retrospectively unless the contrary intention clearly appears; and it defined "vested rights" as they are defined in *Miller* v. *McKenna, supra,* and in 5 California Jurisprudence, section 143, page 748.

My associates, in the majority opinion in this case, apparently take the position that since the business or profession of a pharmacist or an assistant pharmacist is a proper one for *regulation* under the police power of the state, such power to regulate includes the power to destroy. This, however, is not consonant with holdings of our courts. In *Riley* v. *Chambers,* 181 Cal. 589 [185 P. 855, 8 A.L.R. 418], our Supreme Court said at pages 592-593 : "Nor can it be controverted that the right to engage in a lawful and useful occupation cannot, in effect, be taken away under the guise of regulation." (Also see *Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 350 [79 P.2d 1080], citing *Riley* v. *Chambers* and other cases. Also see *In re Jones,* 56 Cal.App.2d 658, 664 [133 P.2d 418] ; *Mattei* v. *Hecke,* 99 Cal.App. 747, 751 [279 P. 470].)

In *Rosefield Packing Co.* v. *Superior Court,* 4 Cal.2d 120 [47 P.2d 716], at page 122, it is declared that the question of constitutionality of a statute may be determined upon settled principles; that "The retrospective application of a statute may be unconstitutional if it is *ex post facto,* that is, applying to criminal matters; or if it deprives a person of a vested right; or if it impairs the obligation of a contract." (Also see *Buck* v. *Canty,* 162 Cal. 226, 234 [121 P. 924].)

Conceding the power of the Legislature to *regulate* the practice of law, medicine, pharmacy, or any other such profession, and conceding that acquired rights to practice such professions may, after notice and hearing, be suspended or revoked for good cause shown, the Legislature, by repealing sections 4160-4162 of the Business and Professions Code, did not purport to regulate the practice or activities of assistant pharmacists; it merely wiped out the statutes under which the registration of assistant pharmacists was authorized. Whether this was done because of some notion that assistant pharma-

cists, who had been permitted registration for a period of over forty years, had become a menace to the public health and welfare, or for some other reason, does not appear. But the question before us is whether, by the repeal of such sections, assistant pharmacists previously qualified may be deprived of the rights theretofore conferred, or whether the repealing statute shall be held to have only prospective operation, that is, prohibit the registration thereafter of assistant pharmacists, while assistant pharmacists previously registered shall be permitted to continue to be registered as such, subject, of course, to reasonable regulation. By refusing to comply with petitioner's request for his registration for 1944-1945, the Assistant Director of the Department of Professional and Vocational Standards has elected to give the repealing statute retroactive operation the effect of which is to deprive petitioner of his vested property right to practice as an assistant pharmacist.

It is my view that under the decisions hereinabove cited the repealing statute may not be given such retrospective application so as to deprive petitioner of the right to renewal of his registration as an assistant pharmacist for whatever value such registration may have (which is all he asks) so long as he continues to comply with statutes regulating the activities of assistant pharmacists, which regulatory enactments are not under attack in this proceeding.

No demurrer or answer to the petition filed herein was filed by respondent, and at the hearing counsel appearing for it stated that he believed that the petition was good. He said: "You might say this: If we had the classification of assistant lawyers, those practicing as assistant lawyers for five years would be entitled to practice in the state of California as attorneys at law, but those who had practiced on that particular date four years and eleven months would be chopped off and there would be no further classification of assistant lawyers." And in reply to the inquiry: "And they would thereby be deprived of a vested right which they had acquired by virtue of the fact that they had fully complied with the requirements?" he stated: "That is true."

The writ prayed for should be granted.