**UNITED STATES of America v. Tony BORDENELLI, Eyvohn Bordenelli.**

**L.B. & W. No. 4004.**

District Court, Alaska. Third Division. Anchorage.
July 2, 1954.

S. J. Buckalew, Jr., U. S. Atty., Anchorage, for plaintiff.
T. Stanton Wilson, Anchorage, for defendants.

McCARREY, District Judge.

This matter comes before the court based upon an order to show cause why the liquor license of the above named applicants should not be revoked for the reason that the building or place where said liquors are sold and consumed is less than one-quarter of a mile from a school ground or church building in violation of the provisions of Section 35–4–15, A.C.L.A. 1949, as amended by Chapter 116 Session Laws of the Territory of Alaska 1953.

A check of the United States District Court Clerk's office reveals that on the 13th day of March 1953 the applicants filed an application for an L B & W license under file No. 3750. The file further discloses that protest petitions were filed and that a hearing on said application was commenced on the 4th day of May 1953 before the Honorable Anthony J. Dimond, United States District Judge for the Third Division of the Territory of Alaska. Just prior to the conclusion of the hearing attorneys for the applicants moved the court for leave to submit written calculations or in the alternative to submit and file a new petition and at the conclusion of the hearing the court granted applicants' motion to file briefs or calculations and the applicants were given time in which to file briefs and the protestants given time in which to file answering briefs and the motion to file a new petition was denied.

On May 27, 1953, applicants filed a motion to withdraw their application without prejudice with right to make another application for the reason:

A. That the census and consent petition did not comply with the law.

90

B. That the 1953 Legislature for the Territory of Alaska had modified the liquor license law and that the applicants would be severely prejudiced if they were not allowed to make a showing under the new existing liquor law.

In conformance with the motion The Honorable George W. Folta signed an order on the 16th day of June permitting the applicants to withdraw the pending application without prejudice to the rights of the applicants to file a new petition herein, as there was no other court to handle the matter due to the untimely death of The Honorable Anthony J. Dimond the latter part of May.

Thereafter, on the 29th day of June 1953 by affidavit one of the applicants, Tony Bordenelli, filed a supplemental consent petition and on the 21st day of July 1953 a license was issued by The Honorable J. Earl Cooper, at that time Acting Judge at Nome, Alaska. Thereafter, on the 5th day of September 1953 an order to show cause why the license should not be revoked was signed by The Honorable George W. Folta which sets forth the following:

"It appearing from the records and file in the above entitled matter that in the issuance of the license the law was not complied with in the following particulars:

"(1) No application was on file, the original having been denied and withdrawn.

"(2) No hearing upon any application was set.

"(3) The protestants were not notified.

"(4) The Court failed to consider any application before granting the license.

"(5) The Court failed to consider the protests on file.

"(6) The census and list of process consenting to the issuance of the license failed to comply with the law which became effective June 30."

Thereafter, on the 12th day of October The Honorable George W. Folta revoked the license upon the grounds as set forth in the order to show cause. On the 27th day of October the applicants, by their attorney, filed a motion to reopen the application of the applicants revoked by court and after hearing upon the motion and the testimony of the witnesses by The Honorable George W. Folta on December 4 the court denied the motion to reopen the matter.

Prior to the entry of the order on December 10 the applicants filed a new application for the year 1954 on the 7th day of December and in conformance with the practice of the court this matter was set down and a hearing was had on the 29th day of December 1953 at which time no protestants appeared, although a letter of protest had been received on the 24th day of December reference the above entitled matter and after a consideration of said application the court granted a liquor license for the year 1954, however, the court inadvertently failed to take into consideration the question of renewal of a liquor license at the time of the hearing of this application, being principally concerned with the location of the business in relation to the new law as to distance from church or school and not the legal interpretation of the question of renewal of license as is contemplated by Section 35–4–15 of the 1949 Compiled Laws of the Territory of Alaska, as amended by Chapter 116 of the 1953 Session Laws of the Territory of Alaska.

The sole question to be determined by the court in this matter is: Are the applicants entitled to a renewal of their liquor license for the year 1954 as contemplated by Section 35–4–15 of the 1949 Compiled Laws of the Territory of Alaska as amended by Chapter 116 of the 1953 Session Laws of the Territory of Alaska, after the 1953 license was once issued and then later revoked?

I am of the opinion that this question is best answered upon a definition of the word "renewal". A scrutiny of the cases attempting to define the word "renewal" reveals that

such definition is not easily defined legally, U. S. Campbell River Timber Co. v. Vierhus, 9 Cir., 86 F.2d 673, 675, 108 A.L.R. 763; Sheldon v. Mississippi Cottonseed Products Co., 5 Cir., 81 F.2d 169; 54 C.J. 379, Section 1; 76 C.J.S., Renew, page 1163; 76 C.J.S., Removal of Causes, § 304, page 1146.

Webster's New International Dictionary, Second Edition, defines the word "renewal" n. "renewing, or state of being renewed". The same authority defines the word "renew" v. transitive:

> "1. To make new again; to restore to freshness, perfection, or vigor; also, to gain again as new; to reassume; as, to renew one's strength.
>
> "2. To make new spiritually; to regenerate * * *
>
> "3. To restore to existence; re-establish; recreate; rebuild; as, to renew the old splendor of a palace; to revive; to resuscitate; as, to renew the sentiments of youth.
>
> "4. To repeat; to go over again; to make or do again * * *
>
> "5. To begin again; to recommence; to resume * * *
>
> "6. To replace; also, to restore to fullness or sufficiency * * *
>
> "7. To grant or obtain an extension of; to continue in force for a fresh period."

Thus, as Volume 76 C.J.S., Renewal, page 1164 aptly states "The term 'renewal' has no strictly legal or technical signification, and it is not a word of art. It may be given different meanings, and it has different meanings, varying with the subjects with reference to which it is used. The cases construing the proper meaning to be ascribed to the

term are by no means uniform; it may m**e**an whatever the parties intended when contracting, and the construction is controlled by the intention of the parties."

 It goes without saying that the liquor business must be carefully supervised and the common interest of the general public should be the guide post in issuing and renewing of licenses, Zicherman v. Driscoll, 133 N.J.L. 586, 45 A.2d 620. The issuance of the original license does not confer upon the licensee a right to insist that future application for renewal be governed by law in effect at the time of issuance of original license, 53 C.J.S., Licenses, § 42, pages 641, 642; Cohen v. Splain, Sup., 42 N.Y.S.2d 498, and further the privilege conferred upon the licensee is purely personal in nature and is available and affords protection to the original licensee and to him alone and no others, 53 C.J.S., Licenses, § 42, page 642; Commonwealth v. Lavery, 188 Mass. 13, 73 N.E. 884. Strictly speaking a liquor license is not a property or a property right nor does it create a vested right, 53 C.J.S., Licenses, § 2, page 449; Palmetto Fire Ins. Co. v. Beha, D.C., 13 F.2d 500; Rosenblatt v. California State Board of Pharmacy, 69 Cal.App.2d 69, 158 P.2d 199 and Fochi v. Splain, Sup., 36 N.Y.S.2d 774.

I am of the opinion that in the renewal of liquor licenses the term renewal must be strictly construed and, therefore, the word cannot be defined in as broad a sense, but rather must be limited.

In this case we have the further problem of defining the word "revocation" or to revoke, since this license was revoked. Webster's New International Dictionary, Second Edition, defines the word "revoke" v.:

> "1. To annul by recalling or taking back; to repeal; to rescind; to cancel; to reverse; as anything granted by special act; as, to revoke a will, license, grant, law."

And the same authority defines revocation as n.:

"1. Act of recalling, or calling back, or state of being recalled; recall.

"2. Act of revoking; act by which one, having the right, annuls an act done, a power or authority given, or a license, gift, or benefit conferred; reversal; withdrawal, as the revocation of an edict, a power, a will, or a license.

"3. Recantation; retraction. Obs."

77 C.J.S., page 362 defines the word "revoke" as follows:

"The term 'revoke' is variously defined as meaning to recall, cancel, or set aside; to recall what one has done or promised; to annul; to annul or make void by recalling or taking back; to repeal; to rescind; to call back; to reverse; to abolish; to take back; to withdraw.

"The word carries with it the idea of cancellation by the same power which originally acted, and not the setting aside of an original order by another form of power or jurisdiction. It does not mean 'repudiation.'

" 'Revoke' has been held equivalent to, or synonymous with, 'cancel' see 12 C.J.S. p. 936 note 19.3, 'recall' see 75 C.J.S. p. 640 note 45, 'repeal' see 76 C.J.S. p. 1176 note 61, and 'rescind' see [77 C.J.S.] p. 276 note 37.

"It has been compared with, or distinguished from, 'alter' see 3 C.J.S. p. 898 note 90, 'annul' see 3 C.J.S. p. 1389 note 22, 'regulate' see 76 C.J.S. p. 615 note 79, and 'rescind' see [77 C.J.S.] p. 276 note 38.

" 'Revoked' has been held equivalent to 'ceased' see 14 C.J.S. p. 59 note 43, and 'vacated,' and has been distinguished from 'suspended.' "

As is noted in the definition of the word "revoke" set forth in C.J.S. that the word "revoke" has been held equivalent to "ceased". In other words, when the license was revoked in 1953 the same was vacated, cancelled, and these words carry with them the idea of an absolute cancellation.

■ It is to be noted in this case the same authority which granted the license for the year 1953, through the then Acting Judge, invoked its plenary powers to revoke the same, and, as defined by the dictionary and further amplified by C.J.S., once the license was revoked it became a nullity or, in other words, was taken out of existence; hence, it would be impossible to recreate something that no longer existed. Therefore, with the passing of the rights and privileges under the old license into an eternity where the same could not be revived, the full force and effect of the 1953 Session Laws automatically came into effect. This provided, among other things, that no establishment could obtain a liquor license which was less than one-quarter of a mile distance from a school or church outside of incorporated cities, therefore, the qualifications set forth in Chapter 116 of the 1953 Session Laws of the Territory of Alaska could not be met by the applicants, hence a renewal of that license could not be obtained because the 1953 license had become a nullity and there was nothing left to renew.

I, therefore, am of the opinion that the 1954 license of the applicants should be revoked for the reasons set forth. Revocation of the applicants' liquor license is hereby ordered and the District Attorney's office is instructed to prepare an order of revocation accordingly.

Counsel for the applicants has submitted a brief and cited some law to the effect that this court does not have the authority to revoke the 1954 liquor license stating, among other things, that once a license was granted it became *res adjudicata.*

I am of the opinion that counsel's theory of the law in this respect is not in point and his position is so untenable that it does not warrant further consideration.